Delbert F. Haynes, Plaintiff, v. Montgomery Ward & Company, a Corporation, and The Fair, a Corporation, Defendants-Third-Party Plaintiffs-Appellants, v. Service Operations System of Illinois, Inc., a Corporation, Third-Party Defendant-Appellee.

Gen. No. 49,008.

First District, Second Division.
March 31, 1964.
Rehearing denied May 19, 1964.

Sidley, Austin, Burgess & Smith, of Chicago (James W. Kissel and Frederic F. Brace, Jr., of counsel), for appellants.

John Cadwalader Menk, of Chicago, for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court:

Montgomery Ward and Company and The Fair, defendants and also third-party plaintiffs, appeal from the trial court's refusal to enforce a contract of indemnity in a third-party action arising out of a personal-injury suit. The original suit was filed in the Municipal Court of Evanston and later transferred

to the Superior Court of Cook County. The third-party claim of The Fair against Service Operations System of Illinois (SOS) was severed, and the case proceeded to trial on the underlying claim of Delbert F. Haynes, an employee of SOS, against The Fair.

SOS is a janitorial service firm under contract to maintain various buildings in the Chicago area, including The Fair's Loop and outlying stores. The Fair agreed to pay SOS $170,756.56 a year for maintaining its Loop store and for certain additional services; one of these additional services was described as follows: "Complete Insurance Coverage, with Hold-Harmless Clause for the Fair Store Company included." The contract between The Fair and SOS which is the basis of this controversy contains the following provision: "It is agreed that the Vendor [SOS] holds the Vendee [The Fair] harmless for any and all injuries or accident sustained by the Vendor's employees while on the premises of the Fair Store Company or while en route to perform any services for the Vendee."

So that SOS employees could haul refuse carts and debris between the various floors in The Fair, SOS was given the use of an elevator. Although the elevators were equipped with safety locks to prevent the doors from being opened from the outside, they were easily so opened by the use of a long hook. On the elevator that was used by the SOS employees, the indicator which showed the floor position of the elevator was stuck permanently at one; the evidence shows that the indicator had not been working for a long time before the accident.

Haynes was employed by SOS as a janitor on the premises of The Fair's Loop store. About 8:00 p. m. on December 5, 1959, two hours after closing time, Haynes, who was cleaning around the counters on the first floor, was told by his foreman to take the ele-

341

vator to the eighth floor. Haynes opened the elevator door and stepped in—not to the elevator car, which was not at the first floor level, but into the shaft—and fell to the bottom. On the first trial the jury disagreed; the second trial resulted in a verdict and judgment for Haynes in the amount of $175,000. This judgment was settled by The Fair for $150,000. The Fair then moved for judgment against the third-party defendant on the basis of its contract of indemnity. The trial judge held, as a matter of law, that The Fair was not entitled to indemnity under the contract, denied its motion for judgment on the indemnity contract, and entered judgment for SOS, from which The Fair appeals.

The basis for The Fair's claim for indemnification for the amount paid to satisfy Haynes's judgment is the foregoing quoted hold-harmless clause of the agreement. SOS contends that the written contract upon which The Fair seeks to be reimbursed does not cover this accident because The Fair was negligent in the equipping, maintaining, and controlling of its elevators, and that this negligence was the proximate cause of Haynes's injury. The question presented is whether there should have been specific language in the contract providing that The Fair would be indemnified against its own negligence. The trial judge accepted SOS's theory that because The Fair was negligent and the contract did not have specific language stating that The Fair would be indemnified against its own negligence, The Fair could not recover against SOS.

In De Tienne v. S. N. Nielsen Co., 45 Ill App2d 231, 233, 195 NE2d 240 (1963), the court makes the following general comments as to construction of indemnity agreements:

> "Contracts for indemnification are enforcible in Illinois, including contracts in which one party

takes over responsibility for another's negligence. These latter agreements, however, are carefully scrutinized and strictly construed; they must clearly show the intention of one party to protect itself from claims arising from its own acts of negligence and the intention of the other to assume these obligations. [Citing cases.]"

The case of Russell v. Shell Oil Co., 339 Ill App 168, 89 NE2d 415 (1949), is directly in point. Under the provisions of the indemnity contract between the painting contractor and the oil company, both of whom were allegedly bound by the Workmen's Compensation Act, providing that the contractor should hold the company harmless from all claims for injury to persons, including the contractor's employees, resulting from or arising from any of the contractor's operations, the court held that inasmuch as an injury to one of the contractor's employees sustained while painting a light pole at the oil company's gas station arose in connection with the contractor's operations within the meaning of the contract, the contract was a complete defense to the action against the oil company by the contractor, for the benefit of the contractor's insurer, to recover sums paid to the employee as compensation and medical expenses under the Workmen's Compensation Act. SOS seeks to distinguish the Russell case on the ground that the contract there was "quite broad and detailed in sharp contrast to the brief clause involved in the case at bar." The indemnity clause in Russell provided for indemnification in all accidents " '. . . resulting from or arising in connection with any of CONTRACTOR'S operations . . . .' " In the case at bar the indemnity clause provides indemnification "for any and all injuries or accident . . . ." We fail to see any material difference in the coverage of these contracts of indemnity.

343

Northern States Co. v. A. Finkl & Sons Co., 8 Ill App2d 419, 132 NE2d 59 (1956), is to the same effect as the Russell case. The only question presented upon the appeal, the court held in the Northern States Company case, was whether the indemnity provided was broad enough to cover the accident in question and said (422–23):

> "It will thus be seen that the language of the indemnity in the instant case, 'that the Contractor shall be responsible for any and all injury due to damage to *any person* and/or property, . . . *arising directly or indirectly from or in connection with work performed* or to be performed under this contract . . . and shall hold the Owner harmless of any and all loss or damage from such injury,' (italics ours), is much broader than that in the Russell case. It does not exclude a case of injury to 'any person' due to negligence of Finkl. We think the reasoning and holding in the Russell case should be applied to the instant case."

SOS attempts to distinguish this case by stating that there "the contract is much broader and much more specific than in the case at bar," but we cannot agree with this view of the contract.

The Federal case of United States Steel Corp. v. Emerson-Comstock Co., 141 F Supp 143 (ND Ill 1956), is likewise in point. There the plaintiff corporation engaged the defendant to dismantle all the electrical equipment on the plaintiff's buildings in Gary, Indiana. Without warning to the defendant's electrician who was dismantling the wires, the electric current was negligently turned on, with the result that the employee was severely burned. He brought suit against United States Steel and the seller of the buildings, and recovered a joint and several judgment

against them. He did not sue his employer (the defendant in the case subsequently instituted by United States Steel), but in the employee's suit his employer as indemnitor was given notice and requested to defend. It declined to do so, however, "apparently on the ground," the court theorized (145), that it "believed that the injury was occasioned by the indemnitee's own negligence and as such was not covered by indemnity agreement." United States Steel in the suit it instituted did not dispute that the injury resulted from its negligence; it based its case solely on the proposition that the language of the indemnity clause obligated the defendant employer to indemnify United States Steel for all losses incident to performance of the contract, including those caused by the plaintiff's own negligence. The court adopted the plaintiff's contention and said (146):

> "The language used in the indemnity clause between plaintiff and defendant is all inclusive. The defendant agreed to save harmless and defend the plaintiff 'from and against all suits, actions, legal proceedings, claims, demands, damages, costs, expenses and attorney's fees, in any manner caused by, arising from, incident to, connected with or growing out of the performance of this contract.' There cannot be any broader classification than 'all . . . claims . . . in any manner . . . incident to, connected with or growing out of the performance of this contract.' The phrase 'in any manner caused' obviously includes claims arising from anyone's negligence, including the indemnitee's negligence."

In none of the above cases were the indemnity provisions any more comprehensive than the one we have here in issue, nor did any contract specifically refer to the negligence of an indemnitee; yet in each of these

345

cases the court held that the party claiming indemnity was entitled to be indemnified against its own negligence.

SOS relies to a large extent on Meeks v. George A. Fuller Co., 40 Ill App2d 172, 189 NE2d 387 (1963). In that case the contract stated explicitly that the indemnitee was to be indemnified even though the injury was sustained through the indemnitee's negligence. The inclusion of specific language providing for indemnification against the indemnitee's own negligence does not decide the question in the case at bar. It does not follow that since the contract in the Meeks case mentioned the indemnitee's negligence and the court granted indemnity the converse is also true, namely, that since The Fair-SOS contract does not mention The Fair's negligence this court must deny indemnity.

George Sollitt Const. Co. v. Gateway Erectors, Inc., 260 F2d 165 (7th Cir 1958), is also relied on by SOS. There the court had under consideration an ambiguous contract of indemnity and had to evolve an arbitrary construction. There is dictum in that opinion which supports the position of SOS, but we adhere to the cases previously discussed which were decided on contracts similar to the one here under consideration.

The contract in this proceeding expresses the intention that The Fair shall be indemnified against its own negligence. The relevant part of the contract provides that SOS will hold The Fair "harmless for any and all injuries or accident sustained by" the employees of SOS. We hold that The Fair is covered under this agreement. The obligation to hold The Fair harmless from liability includes liability that may be due to The Fair's negligence. The words "any and all" are all inclusive; their conciseness does not limit their scope; their coverage would not have been extended by making them more specific. If the words

346

"any and all" are to have their commonly accepted meaning, they cover the accident in this case.

The Fair argues and cites cases purporting to negate the doctrine that a person cannot recover in a cause of action where its own conduct may be questioned, and its counsel say that whether a right of contribution exists or not, it is clear in Illinois that one tortfeasor can in certain situations, of which this is one, recover indemnity from another. However, in the view we take of the right of The Fair to recover under its third-party claim on the basis of the hold-harmless clause of the contract, we deem it unnecessary to comment further on the point.

For the reasons stated we reverse the order of the Superior Court entered June 13, 1962 denying the motion of The Fair for judgment on the indemnity contract and granting the motion of SOS for judgment and entering judgment in its favor, and we likewise reverse the provision of a subsequent order denying the motion of The Fair to vacate the order entered June 13, 1962, and remand the cause with directions to enter judgment in favor of The Fair on its third-party claim and against the third-party defendant SOS.

Order of June 13, 1962 reversed in its entirety, subsequent order reversed in part, and cause remanded with directions.

BURKE, P. J. and BRYANT, J., concur.