Sonya Schek, Conservator of the Estate of Oscar Schek, Incompetent, Plaintiff-Appellant, v. Chicago Transit Authority, a Municipal Corporation, Defendant-Appellee.

Gen. No. 50,564.

First District.

January 3, 1968.

Leo S. and Daniel Karlin, and Jerome H. Torshen, of Chicago (Leo S. Karlin and Jerome H. Torshen, of counsel), for appellant.

Heineke, Conklin & Schrader, of Chicago (William H. Schrader and Edwin A. Strugala, of counsel), for appellee.

TRAPP, J.

Plaintiff appeals from an order of the trial court, final and appealable in form, dismissing an action for personal injuries. The complaint, originally filed by Oscar Schek, alleges that he was injured by the negligent operation of defendant's train while he, Schek, was upon the station platform in the exercise of his ordinary care for his own safety. Subsequent to the filing of the complaint, the conservator was substituted as plaintiff.

Defendant's motion, with pertinent exhibits attached, alleged that Schek was a news vendor engaged in the operation of his business at the time of the occurrence under a certain license agreement dated February 9, 1960, with Union News Company, which granted to Schek the privilege of operating a newsstand in the subway, and that by the agreement, Schek undertook to indemnify and save harmless Union News and the defendant against liability for injury to any person, including himself, in connection with the operation of the newsstand.

In the motion it is further alleged that Union granted such license pursuant to an agreement with the defendant whereby Union was granted the exclusive right and privilege of installing, maintaining and operating news-stands on the defendant's subway passenger platforms. In such agreement, Union undertook to indemnify defendant against all actions and claims, including (1) injury to any person arising through the negligence of Union's licensees, or to which their negligence should contribute, and (2) damages for injury to any licensee of Union while in or upon the platform of the defendant when engaged in the news vending business. The agreement between the defendant and Union, effective at the date of the contract between Schek and Union, was dated October 22, 1954.

In its motion, defendant contends that the action is barred by either, or both, the undertaking of Schek to indemnify the defendant, or the indemnity of the defendant given by Schek's licensor, Union News, but that Schek had no greater right against the defendant than had Union.

The agreement, dated February 9, 1960, between Schek, called the licensee, and Union, called the licensor, provides that Union grants to Schek the privilege of operating a newsstand at a named station of defendant; that the newsstand and its appurtenances are the property of Schek, to be located in and upon a space platted as per a drawing specified, and that Schek is to maintain and repair the same in a good condition; that Schek is to pay the sum of $80 per month on the first of each month, subject to cancellation on five days' written notice, or upon the termination of the agreement between Union and the defendant. The agreement provides that Union shall have a first lien on licensee's interest, which may be foreclosed in equity, and for which a receiver may be appointed. Union reserved the right to inspect plaintiff's newsstand, and there was provision that Union could specify that certain merchandise be sold. The agreement also provided that it was to be:

". . . subject and subordinate to all of the terms and conditions of agreement. . . ."

between the defendant and Union.

The language of exculpation and indemnity at issue is as follows:

"Licensee hereby assumes all risk of and liability for loss or damage to property owned by Licensee or third persons, and any injury to or death of any persons (including Licensee), by reason of the condition or operation of said newsstand, and Licensee shall indemnify and save harmless Licensor and Chi-

74

cago Transit Authority from all claims for any such loss, damage, injury or death, whether caused by the negligence of Licensor, Chicago Transit Authority, their agents or employees, or otherwise. Licensor shall provide a policy of public liability insurance, insuring Chicago Transit Authority, Licensor and Licensee, against any loss, cost, damage or expense by reason of injury to or death of any person or person's arising from, growing out of, or in any way connected with the operation of the licensed premises, up to the limits of $25,000 for injury to or death of any one person, and $100,000 for injury to or death of any number of persons in any one accident. Licensee shall pay Licensor for procuring said insurance $2.00 per month."

The agreement in effect between the defendant and Union gives the latter the exclusive right and privilege to install, maintain and operate newsstands on the premises of the defendant, and, in effect, permits Union to operate, or license others to operate (a) newsstands then owned by defendant, (b) newsstands owned by Union, and (c) newsstands owned by licensees of Union.

The agreement for indemnity between defendant and Union is in the following language:

"Company shall indemnify and hold harmless Authority by insurance coverage in amounts and with a company or companies satisfactory to Authority, against all loss and against all suits, actions, claims liability, judgments for damages, costs and expenses arising from the sale of merchandise hereunder and including but not limited to the following:

"(1) . . . (Negligence of Union employees or licensees). . . .

"(2) Damages, however caused, to property owned by or in the custody of Company or its

75

licensees or for injury (including death) to any servant, agent, employe or licensee of Company or its licensees, while in or upon the stations, platforms, mezzanines, structures, or premises of Authority when engaged in or about said business;

"(3) . . . (Injuries from any article left on the premises by Union or licensees). . . ."

It is defendant's claim that by the terms of the agreement, Schek assumes all risk of injury to himself from any cause whatsoever, for it is contended that the "operation" of the newsstand is a term of unlimited scope and involves all activities of Schek while upon the premises of the defendant. In its argument defendant includes injuries caused to Schek by defendant's negligent employees while he was picking up change from the platform or engaged in wiping the newsstand, and it is said that Schek's agreement required him to indemnify defendant if persons delivering merchandise or otherwise dealing with him were injured by defendant's negligence. By logical extension, the argument would include the requirement that Schek indemnify defendant if a customer of Schek making a purchase at the newsstand was injured by defendant's negligence.

These contentions must be considered in the light of several factors.

■■ Exculpatory clauses are strictly construed against the parties they purport to benefit. Valentin v. D. G. Swanson & Co., 25 Ill App2d 285, 167 NE2d 14; Book Production Industries v. Blue Star Auto Stores, 33 Ill App 2d 22, 178 NE2d 881. The agreement of one party to protect another from the consequences of his own negligence must be unequivocal and the construction should be reasonable and equitable to the parties. Moss v. Hunding, 27 Ill App2d 189, 169 NE2d 396.

The agreement specified that Schek was the owner of the newsstand operated at and upon an area specified in a plat of defendant's station, and that he was responsible for its maintenance and repair. The Union-defendant's agreement provides that other licensees may use newsstands owned by the defendant or by Union. It may be reasonable for a licensee to assume risk of injury at a newsstand which he maintains, or owns.

With respect to the indemnity and liability insurance provision, it is to be noted that coverage is provided for injuries to others growing out of, or in connection with, the operation of the "licensed premises."

While agreements for exculpation and for indemnity are not precisely the same, we have carefully examined authorities by defendant upon indemnity agreements as indicative of the extent and scope of the agreement at issue. None of them contain such language of limitation to a stated area and structure as is in the agreement at issue. In Russell v. Shell Oil Co., 339 Ill App 168, 89 NE 2d 415; DeTienne v. S. N. Nielsen Co., 45 Ill App2d 231, 195 NE2d 240; and Newberg Const. Co. v. Fischbach, Moore & Morrissey, Inc., 46 Ill App2d 238, 196 NE2d 513, the language providing for indemnity is so broad as to cover the performance of construction work contracted for and was not limited to specified areas or structure. Again, in DeTienne and in Newberg, the court referred to complex agreements relating to large construction jobs wherein the parties directly negotiated and apportioned the risk. For example, in Newberg the owner paid sums in addition to the contract amount to provide for procuring insurance for the several risks by indemnitors.

In Haynes v. Montgomery Ward & Co., 47 Ill App2d 340, 198 NE2d 548, the indemnifying agreement provided for coverage of any and all injuries to employees while on the premises, or while enroute to perform contract services.

We find no language limiting the agreement to a specified area such as a newsstand.

An exculpatory agreement was considered in Owen v. Vic Tanny's Enterprises, 48 Ill App2d 344, 199 NE2d 280. This agreement provided that the defendant should not be liable for injuries sustained by a member in, on or about the premises. Again, there is no apparent limitation upon the extent or scope of the agreement.

Defendant cites Bentley v. Palmer House Co., 332 F2d 107. In that case the language of indemnity assumed liability for injury arising out of the use of exhibit space. The injury complained of was incurred in, or as a part of the use of such exhibit space. The opinion does not purport to apply the indemnity agreement to public spaces of the Palmer House.

By its terms the exculpatory provision of the agreement at issue is not coextensive with the provisions in the contract of Union and defendant, whereby Union indemnified defendant for injuries to employees or licensees of Union:

> ". . . while in or upon the stations, platforms, mezzanines, structures, or premises of Authority when engaged in or about said business; . . . ."

This latter provision was in effect when Union executed the contract with Schek, but it was not used. The difference in language authorizes the conclusion that assumption of risk for personal injuries by Schek was limited to injuries in or at the newsstand owned and maintained by him.

█ The language of the cause at issue is not so clear and unequivocal that, under the rule of strict construction of exculpatory agreements, this court will say that the plaintiff is barred from his action by his agreement.

█ █ It has been contended that Schek's status upon defendant's premises was that of a licensee only, and that

by reason of such status the defendant only had a duty not to willfully injure. Such argument is inaccurate in its semantics. By the agreement, he was a licensee for the purpose of conducting a defined business. Without such authority his operation of the newsstand would be a trespass or a tort. Black's Law Dictionary. The agreement which defines Schek as a licensee to conduct the business does not define his status as a person upon the premises controlled, or in the possession of another. By the terms of the agreement he was authorized to place his personal property at a specified place upon the premises, required to pay rent periodically, and he was not only authorized but obligated under the agreement to carry on the business. He had an interest subject to lien and foreclosure. The several rights and obligations are inconsistent with the conclusion that Schek was a licensee in the sense that defendant only had a duty not to willfully injure.

 It is not necessary at this time to determine whether or not Schek was a tenant possessed of a chattel real arising from the placing of his newsstand upon defendant's premises at a platted location for which Schek paid rent upon terms of the quality of a tenancy at will. The agreement between Union and the defendant expressly provided that licensees of Union should have free access to defendant's premises as was necessary for the transaction of the business, subject to the rules and regulations of the defendant. This agreement, in its entirety, reflects that Schek came upon the premises under an express agreement for the purpose of transacting any business in which he, the defendant and Union were mutually interested, and is sufficient to grant the status of a business invitee upon the premises of defendant for the mutual benefit of Schek, defendant and Union. Milauskis v. Terminal R. Ass'n, 286 Ill 547, 122 NE 78; 28 Illinois Law and Practice, p 39, Negligence, § 52.

Defendant has cited Senrow Concessions, Inc. v. Shelton Properties, Inc., 10 NY2d 320, 222 NYS2d 329, 178 NE2d 726, as purporting to show that a business licensee does not acquire an interest in the premises. It does not undertake to pass upon the issue of whether a licensee is a business invitee, or the equivalent of a trespasser.

 The language of the agreement between Schek and Union providing that such agreement "shall be subject and subordinate to" the agreement between the defendant and Union does not alter our conclusion. The terms "subject to" and "subordinate to" are frequently defined in terms of one another. See 40 Words and Phrases, p 596. The words "subject to" are words of qualification and limitation and not of contract. Consolidated Coal Co. v. Peers, 166 Ill 361, 46 NE 1105. The term in legal parlance does not connote personal obligation. Helvering v. Southwest Consol. Corp., 315 US 194, 86 L Ed 789, 62 S Ct 546. One taking an assignment "subject to the terms of lease" does not assume contractual liability on the assignee to carry out the covenants of the lease. Coles Trading Co. v. Spiegel, 187 F2d 984. The words "subordinate to" alone mean standing in an order or rank below another. 83 CJS, 571. There is no language in the agreement authorizing a conclusion that Schek assume the obligation of indemnity existing in the contract between defendant and Union.

We give no consideration to defendant's argument that the order of the trial court should be sustained upon the basis of an alleged record showing that Schek willfully and wantonly placed his head in the path of the train. Such matters were not presented in the motion to dismiss, and the trial court was not asked to pass upon a motion for summary judgment. The argument founded upon a statement of the nature of the injury is not a part of the record on this appeal.

The order of the trial court is reversed and the cause is remanded for further proceedings not inconsistent with the views expressed herein.

Reversed and remanded.

SMITH, P. J. and CRAVEN, J., concur.