MARY RAE (WAGGONER) POLLARD, Plaintiff-Appellant, v. JOHN D. WAGGONER, Defendant-Appellee.

Fifth District   No. 5—86—0749

Opinion filed January 12, 1988.

502

John Long, of Troy, for appellant.

G. Edward Moorman, of Williamson, Webster, Groshong, Moorman & Falb, of Alton, for appellee.

JUSTICE LEWIS delivered the opinion of the court:

The instant appeal is from a judgment entered subsequent to the parties' divorce, in which the trial court construed a provision of the divorce decree awarding the parties' marital residence to the plaintiff "subject to the indebtedness on said [property]" as imposing the obligation to pay the indebtedness on the plaintiff. The plaintiff, Mary Pollard (formerly Waggoner), and the defendant, John Waggoner, were divorced in February 1977, and, following protracted litigation regarding the indebtedness in question, the defendant paid the indebtedness and brought the instant suit to recover the amount paid from the plaintiff. The trial court found that the provision awarding the marital residence to the plaintiff "subject to the indebtedness" thereon included an obligation on the part of the plaintiff to pay the outstanding second mortgage on this property and ruled in favor of the defendant. We reverse.

In September 1976, approximately five months before entry of the parties' divorce decree, they borrowed $5,500 from the First National Bank of Wood River (Bank) and, in return, executed a "collateral installment note" for the amount of $7,504.20 payable to the Bank. The promissory note was secured by a second mortgage on the parties' marital residence and a lien on the parties' 1973 International Scout automobile. The money obtained from the loan was used to purchase a lease of a fishing cabin on the Illinois River. The loan was to be repaid in monthly payments of $125.07.

The parties separated in October 1976. The husband thereafter paid the first six monthly payments on the promissory note, making two payments in December 1976 and four payments in February 1977. On February 23, 1977, a divorce decree was entered which incorporated the settlement agreement prepared by the plaintiff's attorney and agreed to by the defendant, who was not then represented by an attorney. Paragraph 4 of the settlement agreement read as follows:

> "4. Plaintiff will retain the residence of the parties, the motor vehicle and the furnishings, subject to the indebtedness on said items ***."

Although not specifically provided for in the agreement, the defendant retained the fishing cabin on the Illinois River and the parties'

1973 International Scout automobile, upon which the Bank held a lien to secure repayment of the loan obtained for the lease of the fishing cabin. The agreement made no provision for payment of the parties' debts.

Following entry of the parties' divorce decree, the defendant continued to make monthly payments on the promissory note until more than a year later on March 1, 1978. He ceased making payments at that time upon his attorney's instructions.

On October 11, 1977, after the parties' divorce but before the defendant ceased making payments on the note, the defendant caused his parents to sign the promissory note as additional co-makers in order to obtain a release of the lien on the 1973 International Scout automobile. At some time after the parties' divorce, the defendant sold his interest in the lease of the fishing cabin for $4,000. He retained the proceeds of that sale for himself.

When the plaintiff was unable to sell the marital residence after the parties' divorce, at least in part because of the second mortgage on the residence, she commenced a proceeding to have this mortgage removed as an encumbrance upon the title. The trial court denied the plaintiff the relief she requested, and this judgment was affirmed on appeal (see *Waggoner v. Waggoner* (1978), 66 Ill. App. 3d 901, 383 N.E.2d 795; *Waggoner v. Waggoner* (1979), 78 Ill. 2d 50, 398 N.E.2d 5), with the supreme court holding that the trial court had no jurisdiction to consider the post-judgment motions filed by the plaintiff.

After the defendant ceased making the monthly payments on the second mortgage on March 1, 1978, the Bank filed a complaint to foreclose the second mortgage on the plaintiff's residence. The plaintiff's present husband, Lee Pollard, paid off the second mortgage, took an assignment of the promissory note against the defendant and his parents, and obtained a confessed judgment against them in the amount of $6,623.01. This judgment was affirmed on appeal, and the defendant and his parents subsequently paid Lee Pollard the amount of $9,572.02, which included interest on the confessed judgment. The defendant then commenced the instant case by filing a pleading entitled "Citation" on May 9, 1985, in which he sought to have the plaintiff held in contempt for not paying the second mortgage indebtedness on the marital residence and thereby leaving him and his parents vulnerable to the confessed judgment on the related promissory note.

At hearing on the defendant's "Citation" on June 13, 1985, the trial court took statements from the parties' attorneys regarding their clients' positions and the evidence they had to support their positions. Other than the testimony of a vice-president of the Bank regarding

the transactions on the promissory note indebtedness, no testimony was taken from witnesses, and the attorneys indicated their awareness that their statements would be taken as stipulations.

The trial court granted the defendant's "Citation," found the plaintiff to be in contempt for not having paid the second mortgage, and entered judgment against her in the amount of $9,572, plus costs. In its written memorandum of judgment, the court noted that the defendant had made payments on the second mortgage after entry of the divorce decree until his attorney advised him not to, but stated that these payments were made

> "as a result of his long-standing relationship to the [Bank], and because of his reluctance to damage his own credit as an original signer of the second mortgage, and not because of any obligation to make such payments under the divorce decree or any agreement between the parties."

The court additionally found that it was "the understanding and agreement" of the parties that the retention by the plaintiff of the marital residence "subject to the indebtedness" thereon "included an obligation on the part of the plaintiff to pay the outstanding second mortgage to the [Bank]."

On appeal from this judgment the plaintiff contends that the provision of the divorce decree awarding the residence to the plaintiff "subject to the indebtedness" thereon merely qualified the estate the plaintiff took in the residence and did not create a personal obligation for the plaintiff to pay that indebtedness. The plaintiff asserts, rather, that any ambiguity created by this provision should be determined by looking at the parties' performance under the decree and that the defendant's conduct in making monthly payments on the note in question showed that the parties intended for the defendant to be solely responsible for payment of the second mortgage indebtedness on the residence.

■■■ It is settled that a property settlement agreement incorporated into a divorce decree constitutes a contract and is to be construed according to the ordinary rules for the construction of contracts. (*Halper v. Halper* (1978), 57 Ill. App. 3d 588, 373 N.E.2d 598.) The primary purpose in the construction of such contracts is to ascertain and, where possible, give effect to the intention of the parties. (*Halper v. Halper* (1978), 57 Ill. App. 3d 588, 373 N.E.2d 598.) The language used by the parties is the best indication of this intent, and, when the contract language is unambiguous, it should be construed according its plain and ordinary meaning. See 12A Ill. L. & Prac. *Contracts* §§232, 237 (1983).

■■ ■ In the construction of contracts, the courts have had occasion to construe particular words and phrases used in contracts. The words "subject to" or "subordinate to" have been interpreted by Illinois courts as words of qualification and limitation rather than words of contract creating a personal obligation on the part of the contracting party. (12A Ill. L. & Prac. *Contracts* §238 (1983); see *Schek v. Chicago Transit Authority* (1968), 91 Ill. App. 2d 71, 234 N.E.2d 11, *rev'd on other grounds* (1969), 42 Ill. 2d 362, 247 N.E.2d 886.) Thus, it has been held that even though a person takes land "subject to" an indebtedness, he does not have a personal obligation to pay the indebtedness or to indemnify his grantor against the payment of the indebtedness unless he has expressly agreed to do so. See *Pearce v. Desper* (1957), 11 Ill. 2d 569, 144 N.E.2d 617; *Fonda v. Miller* (1951), 411 Ill. 74, 103 N.E.2d 98; *Life Savings & Loan Association v. Bryant* (1984), 125 Ill. App. 3d 1012, 467 N.E.2d 277.

In the instant case, when the parties, in the property settlement agreement, provided that the plaintiff would retain the marital residence "subject to the indebtedness" thereon, they did not indicate that the plaintiff was to assume the obligation of paying this indebtedness. Under Illinois case law construing the "subject to the indebtedness" phrase in relation to the transfer of property, this phrase merely qualified the estate the plaintiff was to receive and did not impose the burden of payment upon her. Thus, the plaintiff was not required by reason of the language in question to assume the burden of paying the second mortgage indebtedness or to indemnify the defendant and his parents for their payment of the indebtedness. Rather, the language merely qualified the estate received by the plaintiff and indicated that her interest in the marital residence was encumbered by the second mortgage so as to be susceptible to foreclosure in the event of nonpayment.

The trial court here implicitly found the "subject to the indebtedness" phrase to be ambiguous and looked to the circumstances surrounding the execution of the parties' agreement to determine their intent regarding who was to pay the indebtedness. As set forth above, the phrase in question has a settled legal meaning and did not require construction by resort to extrinsic evidence. Thus, to the extent that the trial court found from the factual circumstances involved that it was "the understanding and agreement" of the parties that the plaintiff's retention of the marital residence included an obligation on her part to pay the outstanding second mortgage on this property, its finding was unwarranted and constituted error.

From a review of the record, moreover, we find no evidence to

sustain the trial court's finding that the parties intended that the plaintiff would assume the obligation of paying the indebtedness in question. Rather, as stipulated to by the parties, the evidence showed that the defendant had made all of the payments on the second mortgage indebtedness following the parties' separation and that he had continued to make these payments for more than a year after their divorce. The defendant, when questioned by the trial court as to why he had continued to make these payments if he felt that his wife was obligated to do so, indicated that he hadn't wanted the Bank to foreclose because he had done a lot of business with the Bank. He stated, however, that he had discontinued making such payments when his attorney told him that it "was not [his] obligation." The defendant's attorney argued at the hearing that the defendant had made the payments because of a mistaken impression that it was his obligation to do so. Thus, it does not appear, as found by the trial court, that the parties had an understanding that the plaintiff would make the payments on the second mortgage indebtedness but, rather, that the defendant felt it was his obligation to make these payments until his attorney advised him otherwise.

■ Other circumstances of the parties' agreement and their performance under the agreement likewise fail to support the trial court's finding that the plaintiff was to pay the indebtedness. First, the indebtedness was incurred in order to finance the purchase of the leasehold on the fishing cabin that was retained by the defendant. It could be inferred, therefore, that the defendant was to receive this property in return for paying off the indebtedness incurred to purchase it. Moreover, since both parties took property that was subject to the indebtedness, the fact that the plaintiff retained the marital residence subject to the second mortgage failed to indicate that she alone was to pay this indebtedness. Finally, the defendant showed his understanding of his obligation for the indebtedness when, some months after the divorce in October 1977, he prevailed upon his parents to co-sign the note in order to obtain release of the lien upon his 1973 International Scout automobile. The parties' own construction of the agreement, shown by their performance under it, may properly be considered in ascertaining their intention with regard to its terms. (See *Pocius v. Halvorsen* (1963), 30 Ill. 2d 73, 195 N.E.2d 137; *Occidental Chemical Co. v. Agri Profit Systems, Inc.* (1975), 37 Ill. App. 3d 599, 346 N.E.2d 482.) In the instant case, the evidence of the parties' performance under the agreement fails to support the trial court's finding with regard to their intent, and its judgment based on this finding should be reversed.

For the reasons stated in this opinion, we reverse the judgment of the circuit court of Madison County.

Reversed.

HARRISON, P.J., and CALVO, J., concur.