No. 1-05-2587
September 25, 2006


JOHN BUENZ, as Special Administrator of ) Appeal from the
the Estate of Olga L. Buenz, Deceased, ) Circuit Court of
) Cook County.
        Plaintiff, )
)
  v. )
)
FRONTLINE TRANSPORTATION COMPANY, )
VINCENTE A. ZEPEDA, Individually, )
CHINA OCEAN SHIPPING COMPANY, and )
CHINA OCEAN SHIPPING COMPANY AMERICAS, )
INC., )
)
        Defendants, )
)
(China Ocean Shipping Company Americas, )
Inc., Counterplaintiff-Appellee; Frontline )
Transportation Company; )
Counterdefendant-Appellant; and ) Honorable
Vincente A. Zepeda, Individually, ) Diane C. Larsen
Counterdefendant). ) Judge Presiding.


      JUSTICE ROBERT E. GORDON delivered the opinion of the court:

      The central issue in this appeal is whether an indemnification provision in an agreement

between counterplaintiff China Ocean Shipping Co. Americas, Inc. (COSCO), and

counterdefendant Frontline Transportation Co. (Frontline) is sufficient to indemnify COSCO for its

own alleged negligence. COSCO and Frontline were both defendants in the underlying litigation,

which arose from a five-vehicle traffic accident that resulted in the death of Olga Buenz. Her

husband, John Buenz, filed the lead suit in this matter, a wrongful death complaint alleging

negligence on the part of COSCO, Frontline, and counterdefendant Vincente A. Zepeda. According

to the complaint, Zepeda, who was allegedly an agent of Frontline, was the driver of a tractor trailer that struck a bus in which Olga Buenz was a passenger, causing her death. The complaint alleged that COSCO "owned and/or owned a leasehold on, maintained, and/or controlled the trailer and/or container which were part of the tractor trailer" driven by Zepeda. The equipment in question apparently was leased to Frontline by COSCO. In June 2004, COSCO filed a counterclaim against Frontline and Zepeda. In count IV of its counterclaim, which was against Frontline only, COSCO sought a declaration of its rights under an equipment interchange agreement (interchange agreement) between COSCO and Frontline. According to COSCO, Frontline was obligated, pursuant to the interchange agreement, to indemnify COSCO for "any and all costs, expenses, damages and liability *** in the *Buenz* litigation." COSCO moved for summary judgment on count IV, and the circuit court of Cook County granted the motion. Frontline filed a motion to reconsider, which was denied. Frontline appeals from the circuit court's orders granting COSCO's motion for summary judgment and denying Frontline's motion to reconsider. For the reasons set forth below, we affirm and remand.

## BACKGROUND

The accident giving rise to the underlying litigation occurred on October 1, 2003, on Interstate 90 in Marengo County. According to the record, the tractor trailer driven by Zepeda struck the bus in which Olga Buenz was a passenger, starting a chain reaction in which the bus then struck a pickup truck which, in turn, struck another vehicle, and so on. The Buenz complaint

eventually was consolidated with a number of other lawsuits arising from the same accident.[1]

With regard to Frontline, the Buenz complaint alleged a number of negligent acts or omissions on the part of Frontline, "by and through its employee and agent," Zepeda, including: (1) failure to keep proper control of the vehicle, (2) failure to keep a proper lookout for traffic, and (3) failure to reduce speed or change direction to avoid a collision. Frontline denied that it was the employer of Zepeda or that he was its agent, but admitted that there was a contractual relationship between them. Frontline also denied the allegations of negligence. The Buenz complaint also alleged a number of negligent acts or omissions on the part of COSCO, including: (1) permitting the "trailer and/or container" to be used and operated when it knew or should have known that it was not in safe operating condition, (2) permitting the trailer to be used and operated when it knew or should

---

[1]The case numbers of the cases consolidated with *Buenz v. Frontline Transportation Co.*, No. 03 L 12014, include Nos. 03 L 11883, 03 L 11887, 03 L 13794, 03 L 14280, 03 L 14936, 03 L 14712, 04 L 01975, 04 L 03190, 04 L 03194, 04 L 04139, and 04 L 08417.

have known that it was not equipped with proper brakes, and (3) failing to inspect and repair the trailer. COSCO denied these allegations.

In count IV of its counterclaim against Frontline, COSCO referred to the interchange agreement between COSCO and Frontline, which the parties agree was in effect on October 1, 2003, the date of the accident at issue in this case. This agreement, which dealt with the relationship between COSCO and Frontline regarding the "use and/or interchange" of equipment such as containers[2] and chassis, included an indemnity provision. This provision stated, in pertinent part:

> "The ACQUIRING CARRIER [Frontline] shall indemnify The Line [COSCO] against, and hold The Line harmless for any and all claims, demands, actions, suits, proceedings, costs, expenses, damages, and liability, including without limitation attorney's fees, arising out of, [in] connection with, or resulting from the possession, use, operation or returning of the equipment during all periods when the equipment shall be out of the possession of The Line."

COSCO alleged that the accident at issue in the Buenz complaint "arose out of, [was] in connection

---

[2]A "container" is defined as "a portable usu. metal compartment in which freight is placed for convenience of movement esp. on railroad container cars." Webster's Third New International Dictionary 491 (2002).

with or result[ed] from the possession, use or operation of [the tractor trailer] by Frontline." COSCO sought from the circuit court, pursuant to section 2-701 of the Code of Civil Procedure (735 ILCS 5/2-701 (West 2004)), a declaration "that Frontline is obligated, pursuant to the Interchange Agreement, to indemnify and hold COSCO harmless for any and all costs, expenses, damages and liability, including attorneys' fees, in the *Buenz* litigation."

In March 2005, COSCO filed a motion for summary judgment on count IV of its counterclaim. In support of this motion, COSCO pointed to the indemnification provision in the interchange agreement, focusing in particular on the phrase "any and all" in the statement asserting that Frontline would hold COSCO harmless "for *any and all* claims *** resulting from the possession, use, operation or returning of the equipment during all periods when the equipment shall be out of the possession of [COSCO]." (Emphasis added.) COSCO argued that the phrase "any and all" signified the parties' intent that COSCO was to be indemnified against claims arising out of its own negligence. COSCO argued, in addition, that the underlying negligence claims against COSCO fell within the scope of the conduct described in the indemnity provision.

In response, Frontline disagreed with both parts of COSCO's argument. In Frontline's view, the phrase "any and all" was neither specific nor clear enough to signify an intention that Frontline would indemnify COSCO for claims resulting from COSCO's own negligence. In addition, Frontline argued, contrary to COSCO's contention, that the underlying negligence claims against COSCO did not fall within the scope of the indemnity provision. Frontline noted that this provision specifically limited indemnification to those situations where the equipment was out of COSCO's control and possession. However, in Frontline's view, the claims against COSCO, such as the allegation that

COSCO failed to inspect and repair the trailer, "are not related to periods when the equipment is out of the possession of COSCO, but rather to periods in which the equipment is in the possession of COSCO."

On June 10, 2005, the circuit court granted COSCO's motion for summary judgment on count IV.[3] In its order, the court referred to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)), which deals with judgments as to one or more but fewer than all of the parties or claims in a proceeding. Pursuant to Rule 304(a), the circuit court stated: "There is no just reason to delay appeal or enforcement of this court's judgment" as to count IV. Frontline's motion to reconsider was denied on July 20, 2005. As noted, Frontline appeals from the circuit court's June 10 order granting COSCO's motion for summary judgment and the court's July 20 order denying Frontline's motion to reconsider.

## DISCUSSION

Summary judgment is proper where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *General Casualty Insurance Co. v. Lacey*, 199 Ill. 2d 281, 284 (2002); 735 ILCS 5/2-1005(c) (West 2004). We review the granting of a motion for summary judgment *de novo*. *General Casualty*

___

[3]On November 15, 2005, the circuit court entered an order *nunc pro tunc* to June 10, 2005, providing that the court's order granting summary judgment in favor of COSCO applied to all pending consolidated cases in the underlying litigation.

*Insurance Co.*, 199 Ill. 2d at 284; *Amalgamated Transit Union, Local 241 v. Chicago Transit Authority*, 342 Ill. App. 3d 176, 179 (2003).

In Illinois, contracts of indemnity against one's own negligence are generally valid and enforceable, provided that the indemnitor's obligations are set forth in clear and explicit language. *Burlington Northern R.R. Co. v. Pawnee Motor Service, Inc.*, 171 Ill. App. 3d 1043, 1045 (1988). It is not necessary that such a contract make specific reference to indemnification for an indemnitee's negligence, so long as the language employed clearly indicates that this was the intent of the parties. *Rios v. Field*, 132 Ill. App. 2d 519, 521-22 (1971).

### A. Construction of the Phrase "Any and All"

In the case at bar, as previously indicated, the parties dispute whether the phrase "any and all" in the indemnity clause constitutes an explicit or unequivocal expression of an intent that COSCO be indemnified for its own negligence. COSCO argues that the parties' use of use of this phrase explicitly shows such an intent, and Frontline disagrees.

In considering this issue, several panels of this court have concluded that use of the phrase "any and all" in an indemnity agreement is sufficient to include liability arising from the indemnitee's negligence. *Haynes v. Montgomery Ward & Co.*, 47 Ill. App. 2d 340 (1964); *Economy Mechanical Industries, Inc. v. T.J. Higgins Co.*, 294 Ill. App. 3d 150 (1997); *Rios v. Field*, 132 Ill. App. 2d 519 (1971); *Fosco v. Delisi*, 103 Ill. App. 2d 457 (1968). In *Haynes*, for example, the plaintiff (The Fair), a retailer, had contracted with SOS, a janitorial services company, to maintain The Fair's store in downtown Chicago. In order for SOS to be able to perform its services, SOS was given the use of one of the store's elevators. The floor indicator on this elevator was permanently

stuck. A janitor employed by SOS stepped into what he thought was the elevator car, but instead was the elevator shaft, and fell to the bottom. The janitor sued The Fair, and the trial resulted in a judgment for the janitor. The Fair brought a third-party action against SOS, claiming that SOS was obligated to indemnify The Fair under the terms of an indemnity provision included in the contract between The Fair and SOS. This provision stated: "'It is agreed that the Vendor [SOS] holds the Vendee [The Fair] harmless for any and all injuries or accident sustained by the Vendor's employees while on the premises of the Fair Store Company or while en route to perform any services for the Vendee.'" *Haynes*, 47 Ill. App. 2d at 341. The trial judge denied The Fair's motion for judgment against SOS and entered judgment in favor of SOS. On appeal, the appellate court reversed. The appellate court held that the contract between The Fair and SOS "expresses the intention that The Fair shall be indemnified against its own negligence." *Haynes*, 47 Ill. App. 2d at 346. The court pointed to the agreement's use of the phrase "any and all" and stated:

"The words 'any and all' are all inclusive; their conciseness does not limit their scope; their coverage would not have been extended by making them more specific. If the words 'any and all' are to have their commonly accepted meaning, they cover the accident in this case." *Haynes*, 47 Ill. App. 2d at 346-47.

Notwithstanding the foregoing, Frontline points to *Karsner v. Lechters Illinois, Inc.*, 331 Ill. App. 3d 474 (2002), a Third District case which held that the phrase "any and all" in the parties' indemnity agreement was insufficient to indemnify the indemnitee for its own negligence. *Karsner*, 331 Ill. App. 3d at 477. *Karsner* has been rejected by *Washington Group International, Inc. v. Mason Manufacturing, Inc.*, 263 F. Supp. 2d 1115 (N.D. Ill. 2003). In *Washington Group*, one of

the defendants (the indemnitee) filed a cross-claim for indemnity against the other defendant, based on a contract between them. This contract included a clause providing that the indemnitee would be indemnified for "any and all" claims arising from the services to be provided by the indemnitor under the contract. The indemnitor moved to dismiss the indemnitee's cross-claim, arguing that the provision was unenforceable because it did not constitute a clear and explicit promise to indemnify against the indemnitee's own negligence. The court denied the motion. According to the court in *Washington Group*, the "any and all" language included in the indemnity provision was sufficient to provide coverage for the indemnitee's negligence. In reaching this decision, the court pointed to cases dealing with similar "any and all" language that had come to the same conclusion. Among these cases was *Economy Mechanical Industries, Inc. v. T.J. Higgins Co.*, 294 Ill. App. 3d 150 (1997). We agree with *Washington Group* and the cases cited therein regarding the proper interpretation of the phrase "any and all." As the court in *Economy Mechanical Industries* stated:

> "In an indemnity agreement, a general reference to 'any and all' claims, losses, injuries, and the like will generally be construed as indicating an intention by the parties that the indemnitee be indemnified for damages resulting from the indemnitee's own negligence."
> *Economy Mechanical Industries*, 294 Ill. App. 3d at 155.

In our view, this accurately states the prevailing interpretation of the phrase "any and all" under Illinois law. Accordingly, we decline to follow *Karsner*, which runs counter to this interpretation. In the case at bar, we conclude that the phrase "any and all" in the indemnity clause showed unequivocally that the parties intended for COSCO to be indemnified against any and all negligence claims within the scope of the indemnity provision, including those arising from COSCO's own

9

negligence.

## B. The Scope of the Indemnity Provision

Frontline also argues that the underlying negligence claims against COSCO did not fall within the scope of the indemnity provision and the granting of summary judgment was improper on this ground as well. As previously indicated, these underlying claims included allegations that COSCO:

(1) permitted the "trailer and/or container" to be used and operated when it knew or should have known that it was not in safe operating condition, (2) permitted the trailer to be used and operated when it knew or should have known that it was not equipped with proper brakes, and (3) failed to inspect and repair the trailer. Frontline notes that the indemnity provision in the interchange agreement is limited to those situations where COSCO's equipment was out of COSCO's control and possession. In Frontline's view, the claims against COSCO, such as the allegation that COSCO failed to inspect and repair the trailer, "are not related to periods when the equipment was out of the possession of COSCO, but rather to periods in which the equipment [was] still within COSCO's possession."

We disagree with Frontline's contention that the claims against COSCO are not within the scope of the indemnity provision. Under this provision, as previously indicated, Frontline is required to indemnify COSCO for any and all claims arising out of, in connection with, or resulting from "the possession, use, operation or returning of the equipment during all periods when the equipment shall be out of the possession of the Line." It is undisputed that it was Frontline (not COSCO) that was using the equipment in question at the time of the accident. Moreover, this

10

accident was the occurrence that gave rise to the underlying claims. These claims, including the allegations against COSCO, clearly arose from, were in connection with, or resulted from Frontline's use and operation of the equipment at a time when the equipment was out of the possession of COSCO. See *Burlington Northern R.R. Co. v. Pawnee Motor Service, Inc.*, 171 Ill. App. 3d 1043, 1047 (1988) (indemnity provision need not state the specific acts of negligence to be covered in order to be effective).

We conclude that the indemnity provision in the case at bar clearly and unequivocally stated the parties' intention that COSCO was to be indemnified for any and all negligence claims within the scope of the indemnity provision, including those arising from COSCO's own negligence. We conclude, in addition, that the underlying claims against COSCO are within the scope of this indemnity clause.

CONCLUSION

For the reasons set forth above, we affirm the circuit court's granting of summary judgment in favor of COSCO on count IV of COSCO's counterclaim. We also affirm the circuit court's denial of Frontline's motion to reconsider. The cause is remanded to the circuit court for further proceedings.

Affirmed and remanded.

McBride, P.J. and Cahill, J., concur.