MARY R. WAGGONER, Plaintiff-Appellant, *v.* JOHN WAGGONER, JR., Defendant-Appellee.

Fifth District   No. 77-454

Opinion filed December 12, 1978.

KARNS, J., dissenting in part.

Wendell Durr, of Edwardsville, for appellant.

Donald E. Groshong, of Groshong and Moorman, of East Alton, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

The plaintiff, Mary Waggoner, appeals from an order entered in a post-divorce proceeding denying plaintiff's motion for enforcement of provisions of the divorce decree, finding defendant, John Waggoner, not in contempt of court, denying plaintiff's motion to reconsider the motion for enforcement and finding of contempt, and denying the motion to clarify, amend and/or modify the divorce decree *nunc pro tunc*.

On appeal the plaintiff requests that we interpret the following paragraph, especially the underscored provision, appearing in the property settlement agreement which was incorporated in the divorce decree:

"Plaintiff will retain the residence of the parties, the motor vehicle and the furnishings, *subject to the indebtedness* on said items, and the Defendant will upon request execute any necessary document to effect transfer of ownership to said items to Plaintiff and subject to the indebtedness thereon,* * *."

Plaintiff and defendant were married on December 2, 1972. One child, Jennifer, was born to them. In September 1974, the couple purchased a marital residence located at 974 North Wood River Avenue, Wood River, Illinois. In order to make the down payment on the residence the parties asked for, and subsequently received, $5000 from defendant's parents. After the down payment was made a balance of approximately $11,500 was owed to the bank and secured by a first mortgage on the property. The evidence is controverted as to whether the $5000 was a loan. The plaintiff testified that she believed the $5000 to be money previously earned by the defendant and given to his parents to save for him. She stated that the money was given to defendant's parents so that the defendant would not lose his academic scholarship. The plaintiff also testified that at the time the $5000 was given to them she did not think she had been asked by defendant or his parents to sign a

promissory note for the money. The defendant and his mother, however, testified that the $5000 was a loan and that the plaintiff was asked to sign a note but that she insisted that the transaction was a family matter, done in good faith, therefore a note was not needed. A promissory note was not signed at that time.

The plaintiff, defendant, and defendant's mother testified that in addition to the $5000 given by defendant's parents to the plaintiff and defendant, additional smaller amounts had also been given to the parties during their marriage.

In 1976, the couple purchased, in defendant's name only, a fishing cabin on the Illinois River. A $5000 loan was needed for this purchase and the loan was secured by a second mortgage on the marital residence of the parties. Both parties acknowledged signing the second mortgage.

Sometime in October 1976, after marital disharmony had developed, the defendant left the plaintiff.

In November 1976, the defendant signed a promissory note in favor of his parents for approximately $7700. On December 8, 1976, the defendant's parents took judgment on the $7700 note plus costs of suit and recorded a memorandum of the judgment, thereby causing it to become a lien on the marital residence of the parties.

Divorce proceedings were initiated, and on February 23, 1977, the parties were granted a divorce by the circuit court of Madison County. Incorporated in the divorce decree was a written property settlement which was prepared by plaintiff's attorney and signed by both parties. Pursuant to a provision in the property settlement agreement the defendant, in April of 1977, conveyed by a quit-claim deed all of his interest in the former marital residence. Shortly thereafter, the plaintiff listed the residence with a real estate agency to sell for $24,500. The house was sold but delivery of title and transfer of funds did not occur because the plaintiff did not have clear title due to the judgment lien on the property and the second mortgage.

Plaintiff initiated the present proceedings in the trial court in an endeavor to compel the defendant to remove the judgment lien in favor of his parents and the second mortgage on the cabin as encumbrances upon the title to the former marital residence.

The question presented is whether the provision of the property settlement agreement, "plaintiff will retain the residence of the parties, the motor vehicle and the furnishings subject to the indebtedness on said items," subjects plaintiff's ownership interests in the marital residence to the lien of the second mortgage taken out to finance the purchase of the fishing cabin in defendant's name and the judgment lien secured by the defendant's parents against the defendant only.

The plaintiff asks us to amend, *nunc pro tunc,* the decree of divorce

and property settlement agreement so as to limit the meaning of the phrase "subject to the indebtedness" to include only the first mortgage. For this proposition plaintiff cites *Dauderman v. Dauderman* (1970), 130 Ill. App. 2d 807, 263 N.E.2d 708, asserting that the omission of the words "first mortgage" was a clerical error as to matter of form. We find that the *Dauderman* case is inapposite to the case at bar. In *Dauderman* the words "per month" were omitted from an alimony provision. There were written memoranda of counsel for both parties which clearly suggested that periodic, rather than a lump sum, alimony payments were intended. In the case at bar there was no such memorandum of counsel or any other indication to support the plaintiff's claim of an inadvertent omission as to a matter of form.

Neither do we believe that the provision "subject to the indebtedness" refers only to the indebtedness of the first mortgage.

■■ The general rule is that the provisions of a property settlement agreement and a divorce decree are interpreted by the normal rules in the construction of contracts. (*Halper v. Halper* (1978), 57 Ill. App. 3d 588, 373 N.E.2d 598; *In re Estate of Kite v. Kite* (1974), 19 Ill. App. 3d 932, 312 N.E.2d 366.) Our function is to interpret the provision in question in a reasonable manner and ascertain the intent of the parties as to the provision. *Benninghoven v. Benninghoven* (1976), 39 Ill. App. 3d 286, 349 N.E.2d 421, citing *Breuer v. Breuer* (1972), 4 Ill. App. 3d 179, 280 N.E.2d 518.

■■ The provision in question was drafted by plaintiff's attorney, and found by the trial court to be unambiguous. The court stated that the provision was to be interpreted to mean "all debts incurred on the property," *i.e.*, both mortgages and the judgment lien. We agree with the trial court.

When preparing the property settlement agreement the plaintiff had an opportunity to discover all liens, mortgages or other indebtedness on the property. The second mortgage and the judgment lien were in existence prior to the signing of the property settlement agreement by the parties and prior to the entry of the decree of divorce. The plaintiff signed the second mortgage thus she most certainly had notice of this indebtedness and that it was an encumbrance on the title to the residence.

The judgment lien was duly recorded in the Madison County recorder of deeds office on December 7 or 8, giving record notice to everyone about the judgment. Therefore had the plaintiff examined the record of the chain of title to the property prior to preparing and signing the settlement agreement she would have discovered the judgment lien. Too, the plaintiff was fully aware of the $5000 that passed from defendant's parents to the plaintiff and defendant and that the entire $5000 was used as a down payment on the purchase of the house. It is not an

instance where the judgment lien resulted from money advanced for use by defendant in other personal pursuits.

■■ The plaintiff asserts that this judgment lien on the property was concealed from her. The burden of proving fraud or concealment is on the party asserting it, and that burden is more onerous when a party seeks to vacate, modify and/or amend a property settlement incorporated in a divorce decree. This is so because all presumptions are in favor of the validity of the settlement. (*Lagen v. Lagen* (1973), 14 Ill. App. 3d 74, 302 N.E.2d 201.) Fraud may be an assertion of what is false or a concealment of what is true. The concealment must be shown to have been done with the intention to deceive under circumstances creating an opportunity and a duty to speak. (*Lagen v. Lagen.*) There is no evidence that the defendant tried to conceal the judgment lien on the house. Before the signing of the property settlement agreement and prior to the entry of the decree of divorce the plaintiff had ample opportunity to check the chain of title at the recorder's office or, in the alternative, to at least ask the defendant if the only indebtedness on the property was the first mortgage.

In light of the preceding we cannot find that the trial court erred in its judgment.

Affirmed.

EBERSPACHER, J., concurs.

Mr. JUSTICE KARNS, dissenting in part:

I believe the majority's conclusion that plaintiff failed to prove the existence of fraud perpetrated by defendant on plaintiff is clearly in error. Accordingly, for the reasons stated below, I respectfully dissent in part.

Although the majority properly cites *Lagen v. Lagen*, 14 Ill. App. 3d 74, 302 N.E.201 (1st Dist. 1973), as the controlling authority, it fails to apply it correctly. Fraudulent concealment can be defined as the concealment of a material fact "done with the intention to deceive under circumstances creating an opportunity and duty to speak." (*Lagen v. Lagen*, 14 Ill. App. 3d 74, 79, 302 N.E.2d 201, 205.) The majority fails to find any evidence of fraud, concluding that "plaintiff had ample opportunity to check the chain of title at the recorder's office or * * * to at least ask the defendant if the only indebtedness on the property was the first mortgage." The majority's premise is that there can be no concealment by defendant because plaintiff should have known of the existence of the judgment lien.

I would agree with the majority, if only there were some reason for charging plaintiff with the requisite knowledge. It is unreasonable to require plaintiff to inspect the real estate records on her own marital

home, when under ordinary circumstances she would be aware of all encumbrances. The general rule is that *purchasers* of real estate have a duty to examine the record, and are, therefore, charged with notice of all matters shown thereon. (*Worley v. Ehret*, 36 Ill. App. 3d 48, 343 N.E.2d 237 (5th Dist. 1976).) We are not, however, dealing with purchasers or other third parties. Rather, we are dealing with a woman, whose husband secretly confessed judgment on a note he executed to his parents for the sole purpose of creating a lien on the marital home. In addition, defendant is obligated to disclose the existence of the lien to plaintiff as part of negotiating a good faith property settlement. The fact that plaintiff did not ask defendant if there were other encumbrances on the property is totally irrelevant. She had absolutely no reason to believe that there were liens other than the first and second mortgages, and, therefore, was not put on notice to make further inquiry. "In order to constitute notice there must be something more than a bare suspicion; it must appear that such facts were suggested as would cause a prudent mind to investigate * * *." *Bier v. Weiler*, 203 Ill. App. 144, 151 (1916).

Defendant fraudulently concealed the judgment lien from plaintiff when he was under a duty to disclose its existence. For these reasons, I would impose upon defendant the duty to remove the judgment lien from plaintiff's property.

Even if the majority were correct in finding no fraudulent conduct, the growing trend has been to allow a party to avoid a contract on the ground of unilateral mistake where the other party either had reason to know of, or, in fact, intentionally caused the mistake. (See Restatement (Second) of Contracts §295 (Tent. Draft No. 10, 1975).) There is no doubt that defendant had actual knowledge of the judgment lien as it was his maneuverings that caused it to come into being. The fact that plaintiff could have avoided the mistake by searching the judgment records would preclude relief to the injured party.

> "A mistaken party's fault in failing to know or discover the facts before making the contract does not bar him from avoidance or reformation * * * unless his fault amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing." (Restatement (Second) of Contracts §299 (Tent. Draft No. 10, 1975).)

At all times plaintiff acted reasonably and in good faith. It would be a grievous error to deny her any recourse in this case where defendant intentionally, if not fraudulently, caused the mistake to occur.