*In re* MARRIAGE OF PRENTISS HAWKINS, Petitioner-Appellant, and ARLENE HAWKINS, Respondent-Appellee.

Fifth District   No. 5—86—0299

Opinion filed September 2, 1987.

Timothy R. Neubauer and Warren N. Loar IV, both of Musick & Mitchell, of Mt. Vernon, for appellant.

Morris Lane Harvey, of Fairfield, for appellee.

JUSTICE LEWIS* delivered the opinion of the court:
This appeal arises out of a dissolution of marriage proceeding in which the trial court, following a bifurcated hearing, apportioned the parties' property pursuant to a settlement agreement between the petitioner, Prentiss Hawkins, and the respondent, Arlene Hawkins. The dissolution action was commenced, after a lengthy marriage, on July 9, 1984, and proceedings were conducted on a bifurcated basis with

---

*Justice Lewis replaces Justice Jones, who retired after the cause was taken under advisement.

the grounds being heard first. The dissolution of marriage was entered on September 11, 1984, and all remaining issues were reserved. On August 20 and 22, 1985, a trial was conducted on all remaining issues, and a judgment on those issues was entered on December 18, 1985. Post-trial motions were disposed of on April 28, 1986, with some minor adjustments being made, and the petitioner's appeal followed.

On appeal the husband, the petitioner in the trial court, contends that the trial court erred (1) in failing to adhere to the terms of the marital settlement agreement between the parties and divide their marital estate in equal shares, (2) in improperly dividing the parties' marital debts, (3) in ordering reimbursement for social security payments and contribution of nonmarital property, (4) in charging the petitioner for his post-separation occupancy of the marital residence, and (5) in failing to consider the tax implications of a subsequent sale of property upon its value.

The major asset of the parties' marriage was a fruit orchard and nursery business, which, along with the parties' residence located on the orchard property, was valued at $239,000 as of the date of dissolution. Following dissolution of the parties' marriage in September 1984, the petitioner continued to live in the marital residence and operate the orchard as he had during the marriage. The petitioner testified that he had paid himself a salary from the business during that time and had further paid some of the marital debts from the proceeds of the 1984 harvest of the orchard. At the time of the hearing on property matters in August 1985, the marital debts totaled approximately $30,000. The petitioner testified at that time that the proceeds of the 1985 harvest would about equal the amount of the remaining debt.

At the August 1985 hearing, the parties stipulated that they had agreed that the marital estate should be divided equally between them at values to be determined by the court. The trial court expressly approved this agreement and proceeded to value the property and determine which items of property were to be awarded to each party. In relevant part, the court awarded the orchard business and marital residence to the petitioner and further ordered the petitioner to pay the marital debts of $30,000. The court observed that the petitioner had continued to operate the business during the year since the dissolution of marriage and concluded that since the

> "ownership of the business itself was not disposed of and has not been disposed of until today[,] *** the profits accruing thereto, including the crop which is now being harvested, shall

be applied to the business. And the way that that will be applied is that the debts will be paid *** entirely by [the petitioner]."

The trial court awarded the respondent a cash amount for her one-half interest in the orchard business, including real estate and equipment. The court further awarded the respondent an additional $10,000 because of a "disparity" resulting from social security contributions made on the petitioner's behalf during the marriage and the respondent's contribution of an inheritance constituting a nonmarital asset to the marital estate. Finally, the court found that payments made by the petitioner to the respondent during the period since the dissolution, which were to be treated as an advance of her share of the marital estate pursuant to an interim agreement, were offset by the value of the petitioner's continued occupancy of the marital residence for the period from the parties' separation until the judgment disposing of property matters.

The petitioner has appealed from this judgment, contending that the court's award of marital property resulted in an unequal division contrary to the parties' agreement that the marital estate was to be divided equally between the parties. In response to this argument, the respondent asserts that no enforceable agreement existed and that the court's division of marital property should be upheld as within the trial court's discretion.

Section 502(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1985, ch. 40, par. 502(a)) provides that parties to a marriage may, in order to promote amicable settlement of disputes attendant upon the dissolution of their marriage,

"enter into a written or oral agreement containing provisions for disposition of any property owned by either of them, maintenance of either of them and support, custody and visitation of their children."

The terms of such an agreement, except those providing for the support, custody and visitation of children, are binding upon the court unless the court finds the agreement to be unconscionable. Ill. Rev. Stat. 1985, ch. 40, par. 502(b).

The respondent maintains that the agreement between the parties here was not sufficient because it did not specifically dispose of the parties' property as contemplated by section 502. The respondent asserts that the agreement was vague in that it failed to specify which items of property each party would receive or to designate whether property was marital or nonmarital and further made no valuation of the parties' property. Thus, the respondent contends, the agreement

was not enforceable so as to be binding on the parties or the court in disposing of the parties' property.

The law favors the amicable settlement of property rights in marital dissolution cases (*Horwich v. Horwich* (1979), 68 Ill. App. 3d 518, 386 N.E.2d 620), and the validity of such property settlement agreements will be presumed absent a showing otherwise (*Waggoner v. Waggoner* (1978), 66 Ill. App. 3d 901, 383 N.E.2d 795). The respondent here makes no claim of invalidity based on unconscionability or fraud but asserts that the agreement in question was too vague and incomplete to qualify as a section 502 agreement because it failed to identify, value or dispose of the parties' property. We are unaware of any requirement of specificity in property settlement agreements under section 502. As a general rule, provisions of such agreements will be interpreted by the normal rules in the construction of contracts. (66 Ill. App. 3d 901, 383 N.E.2d 795.) Thus, to the extent that the court was able to give effect to the parties' intention that their marital estate be divided equally, we find that there was a valid and enforceable agreement.

■ The record indicates that counsel for both parties informed the court at the August 1985 hearing on remaining issues that their clients had agreed to an equal division of marital property based upon values set by the court. During their individual testimony both parties expressed that this was their agreement, and the court approved the parties' agreement, including it in paragraph 7 of its judgment:

"7. That the parties hereto have stipulated and agreed that this court shall divide the marital estate of the parties equally or fifty-fifty, which this court should approve."

The court then took great pains to enforce the agreement by dividing what it considered to be marital property equally. While the agreement did not specifically dispose of individual items of property so as to remove all discretion from the trial court, it did relieve the court of the necessity to determine, based on relevant factors under section 503(d) of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 503(d)), what constituted a property division of "just proportions." (*Cf. In re Marriage of Miller* (1981), 98 Ill. App. 3d 1084, 424 N.E.2d 1342 (trial court was not required, in enforcing separation agreement, to make division of property in "just proportions" based on factors of section 503).) We find, therefore, that the agreement was sufficient as a property settlement agreement under section 502, and that the trial court properly recognized and approved the agreement in making its disposition of marital property.

In arguing that the court failed to divide the marital estate

equally as provided by the parties' agreement, the petitioner contends initially that the court erred in requiring the petitioner to pay all of the marital debts from the proceeds of the orchard crop growing in the year after the dissolution of marriage but before the final judgment disposing of the parties' property. The petitioner maintains that since property in a marital dissolution proceeding is to be valued as of the date of dissolution and since the orchard property was ultimately awarded to the petitioner following the August 1985 hearing, the income from the orchard accruing in the year before the final division of property constituted nonmarital property. The petitioner contends, therefore, that the court erred in requiring him to apply the proceeds of the 1985 harvest to the parties' marital debts without allowing him credit for payment of the respondent's half of the debts.

The parties have not cited nor has our research disclosed any case dealing with the question of whether crops grown on land constituting marital property following dissolution of the parties' marriage but before disposition of the parties' property should be considered marital property subject to division or nonmarital property belonging to the party who is ultimately awarded the land in question. The petitioner relies upon the decisions of *In re Marriage of Brooks* (1985), 138 Ill. App. 3d 252, 486 N.E.2d 267, *In re Marriage of Frazier* (1984), 125 Ill. App. 3d 473, 466 N.E.2d 290, and *In re Marriage of.Rossi* (1983), 113 Ill. App. 3d 55, 446 N.E.2d 1198, which stand for the proposition that the proper date for valuation of marital property in a bifurcated dissolution proceeding is the date the dissolution was entered. In each of these cases, the court refused to consider facts arising after the date of dissolution in determining the value of marital assets. See *In re Marriage of Brooks* (1985), 138 Ill. App. 3d 252, 486 N.E.2d 267 (court declined to consider indebtedness incurred by parties' business after their dissolution in assigning a value to that business); *In re Marriage of Frazier* (1984), 125 Ill. App. 3d 473, 466 N.E.2d 290 (trial court improperly considered respondent's estimated future postdissolution earnings in assigning a value to respondent's business); *In re Marriage of Rossi* (1983), 113 Ill. App. 3d 55, 446 N.E.2d 1198 (court declined to consider evidence of post-dissolution diminution in value of parties' closely-held corporation).

We find these cases to be inapposite to the instant case, however, as the question here is not the valuation of the orchard as marital property but whether the crop produced from the orchard after the dissolution of marriage but before the orchard was awarded to the petitioner constituted marital property. The trial court here properly valued the orchard as of the date of dissolution and refused to consider

evidence of a diminution in value of the orchard in the period of time from the dissolution to the August 1985 hearing on property division. While the petitioner argues that the 1985 orchard harvest constituted the petitioner's nonmarital property because the orchard was ultimately awarded to him as his separate marital property, we find no basis for the petitioner's contention that his ownership of the property "related back" to the date of dissolution.

■ The trial court, after hearing evidence at the August 1985 hearing, essentially decided that until the property was divided, income deriving from the continued operation of the orchard should be treated as marital property. We agree and hold that although the orchard was properly valued as of the date of dissolution, the orchard and the income derived from it continued to be marital property until the court awarded the property to the petitioner as his separate property. To hold otherwise would have the effect of giving the petitioner income from property that had not yet been set off to either party but was still owned jointly by both parties. We conclude, therefore, that the trial court properly ordered that the income of the 1985 orchard harvest be applied to the payment of the parties' marital debts. The trial court had an adequate evidentiary basis for making this ruling since the petitioner had testified that the income from the 1985 harvest would approximately equal the marital debts. For the reasons stated we reject the petitioner's contention that the court erred in requiring him to pay the marital debts from the income of the 1985 orchard harvest and affirm the court's ruling in this regard.

■ The petitioner next contends that the trial court erred in ordering the petitioner to pay the respondent an additional $10,000 because of a disparity in social security contributions and because of a contribution by the respondent of nonmarital assets to the marital estate. The petitioner contends that to the extent that this additional payment was made to reimburse the respondent for social security contributions made on the petitioner's behalf from the parties' orchard business, the court's award represented an attempt to divide Federal benefits in violation of the rule precluding division of such benefits in State dissolution proceedings. We agree.

As discussed by the court in *In re Marriage of Evans* (1980), 85 Ill. App. 3d 260, 263, 406 N.E.2d 916, 917-18, *rev'd on other grounds*, (1981), 85 Ill. 2d 523, 426 N.E.2d 854:

> "The right to receive social security benefits is derived from statute and not from the common law. The Federal statute, consistent with its remedial purpose, provides for the various contingencies of life including the dissolution of marriage. Since

the statute itself provides for an equitable distribution of its benefits to dependents, spouses, divorced spouses, and other family members in the event certain contingencies occur, we will not disturb the statutory scheme by suggesting any award of any part of the actual social security retirement benefits to which respondent may be entitled upon his reaching retirement age."

We adopt the reasoning of *Evans* to the effect that the division of social security benefits in a marital dissolution proceeding is improper. The respondent here argues that the trial court did not attempt to divide the petitioner's social security benefits but merely sought to remedy an inequity resulting from unequal contributions during the marriage by making a compensating payment to the respondent. We find no merit in this argument, as the court's award in any event interfered with the Federal statutory scheme providing for the equitable distribution of benefits in violation of that statute and the principle of Federal supremacy. The additional $10,000 payment, therefore, cannot be sustained on the grounds that it constituted reimbursement for social security contributions made on the petitioner's behalf.

■■ To the extent that the court's order requiring the additional $10,000 payment was not attributable to the disparity in social security contributions, the award was based on the respondent's purported contribution of nonmarital assets to the marital estate. The petitioner maintains that any such contribution was not sufficiently traced by clear and convincing evidence and that the respondent presented no evidence to rebut the presumption that the contribution of her nonmarital property was a gift to the marital estate. From a review of the record we find that the petitioner's assertions are correct and that the $10,000 payment cannot be sustained on this basis.

The respondent, in her brief on appeal, argues that the court's award can be sustained on an alternative basis that it compensated the respondent for tax benefits resulting to the petitioner by reason of depreciation deductions generated by the orchard business for the years 1984 and 1985. The respondent did not raise this issue in the trial court nor has the respondent filed a cross-appeal from the trial court's judgment. In making this argument, moreover, the respondent relies upon what purports to be the petitioner's 1985 and 1986 depreciation schedules, which she has appended to her brief but which were not admitted into evidence or included in the record on appeal.

The petitioner has filed a motion to strike this portion of the respondent's brief and all references thereto on the grounds that it contains materials that were not presented to or considered by the trial

court. While the respondent argues that the depreciation schedules are directly traceable to the record as extrapolations of the petitioner's 1984 tax return that was introduced at trial, we agree with the petitioner that these schedules constitute new evidence not considered by the trial court and should be stricken. (See *Kohler v. Central & Southern Truck Lines, Inc.* (1977), 45 Ill. App. 3d 621, 360 N.E.2d 89.) Since the record fails to support the respondent's argument that the $10,000 payment can be sustained on an independent basis not mentioned by the trial court and since the respondent did not raise this issue in the trial court or file a cross-appeal from the court's judgment, we give no further consideration to this contention by the respondent. We find, therefore, that the court's award of the additional $10,000 payment to the respondent constituted error and should be reversed.

In a further contention of error, the petitioner maintains that the trial court charged him for his post-separation occupancy of the marital residence in finding that certain amounts advanced to the respondent by the petitioner during the period between dissolution and property disposition were offset by the difference between the value of the parties' respective automobiles and the fact of the petitioner's continued occupancy of the marital home since the parties' separation. The petitioner's argument notwithstanding, we find that the trial court made a valiant attempt to distribute the marital estate equally while taking into consideration the parties' respective living situations during the extended period before final disposition of the marital property. The trial court was in a superior position to make such a determination, and we decline to alter the balance struck by the court in its attempt to equalize the amounts awarded to each party.

■■ ■ We find no merit in the petitioner's final contention that the court erred in failing to consider, in its valuation of the orchard property, the tax implications resulting from a subsequent sale of that property. While a court should take into consideration tax consequences resulting from a sale of property made necessary by the court's judgment in a dissolution case (see *In re Marriage of Malters* (1985), 133 Ill. App. 3d 168, 478 N.E.2d 1068), the court should not speculate as to the existence and amount of future tax liabilities when no such sale is contemplated by the parties or required by the court's division of property. (*In re Marriage of Emken* (1981), 86 Ill. 2d 164, 427 N.E.2d 125; *In re Marriage of Johnson* (1982), 106 Ill. App. 3d 502, 436 N.E.2d 228.) In the instant case, the petitioner indicated by his testimony that he did not intend to sell the orchard property, and there was nothing in the court's judgment requiring him to do so. It

was thus proper for the court "to ignore any speculative tax implications from a hypothetical sale" of this asset (see 106 Ill. App. 3d 502, 509, 436 N.E.2d 228, 233), and we find no error in this regard.

The petitioner has argued on appeal that since none of what he refers to as nonmarital property can be used to pay debts and offset other matters, he has received less than one-half of the marital estate as contemplated by the parties' settlement agreement. We disagree and find only the issue concerning social security benefits to be meritorious. Our reversal of the court's award of $10,000 to the respondent as reimbursement for the disparity in social security contributions and her contribution of nonmarital property does not affect the equal division of property afforded by the court's judgment. This judgment can be modified by reducing the amount due the respondent by $10,000, which should be done by deducting the $10,000 amount from the final balloon payment of the payment schedule set out by the trial court. This payment schedule in all likelihood has not been complied with because of the delay occasioned by post-trial proceedings and by this appeal; however, any enforcement or modification can be applied for in the trial court if proper payment is not agreed upon or complied with.

We therefore modify the judgment by reducing the net sum to be received by the respondent by $10,000 and affirm the judgment in all other respects.

Affirmed as modified.

KARNS, P.J., and KASSERMAN, J., concur.