In re the **MARRIAGE OF Kenneth L. JAMES, Appellant,**

and

**Linda Ann James, Appellee.**

No. 95CA2074.

Colorado Court of Appeals, Div. V.

June 12, 1997.

Rehearing Denied July 24, 1997.

Certiorari Denied Jan. 26, 1998.

·Arthur M. Frazin, Denver, Hilary Holland, Westminster, for Appellant.

Sonheim, Helm & Less, L.L.P., Phillip A. Less, Arvada, for Appellee.

Opinion by Judge TAUBMAN.

In this dissolution of marriage action between Kenneth L. James (husband) and Linda Ann James (wife), husband appeals from the permanent orders pertaining to division of property. We reverse and remand for further proceedings.

The parties were married for approximately four years. At the time of the permanent orders hearing, husband was 54 years old and wife was 48 years old. Husband was a mathematics teacher in a public school system and had held that position for over 30 years. The two largest assets of the marriage were husband's right to Public Employees' Retirement Association (PERA) pension benefits and the marital residence.

At the permanent orders hearing, ·husband and wife presented expert witnesses who offered sharply conflicting opinions as to the present value of the marital portion of husband's PERA pension. Wife's expert determined the marital value of the pension to be approximately $190,000. In contrast, husband's expert calculated that value to be approximately $58,000, and then reduced that figure by another $8,000 based upon a "social security equivalency."

The trial court chose to follow wife's expert and valued the marital portion of the pension at $190,000.

The trial court concluded that an equal division of the marital estate was equitable. It awarded wife the entire $33,000 equity in the marital residence and other assets totalling $5,746. The trial court then allocated the $190,000 marital portion of the pension to husband along with other assets totalling $7,285, and debts totaling $9,933. In order to equalize the division of marital property, the trial court then ordered husband to execute a promissory note in favor of wife in the amount of $74,303. The note was to become payable when husband began drawing from the PERA pension. Husband's payments under the note would amount to 22 percent of his "monthly annuity" which the trial court calculated as wife's share of the pension. Husband's payments were to continue until the promissory note's principal and interest were paid in full.

### I. Division and Distribution of Pension

Husband first contends that the trial court overvalued the marital portion of his PERA retirement pension. We agree.

In *In re Marriage of Hunt*, 909 P.2d 525 (Colo.1995), the supreme court detailed three methods of distribution for use by courts to divide a pension upon a dissolution of marriage: net present value, deferred distribution, and reserve jurisdiction.

Under the net present value method, both the pension and its marital portion are valued at the time of dissolution, and the marital portion is distributed immediately to the non-employee spouse. Under the deferred distribution method, the marital percentage of the pension is determined at the time of dissolution, but benefits are not distributed until the benefits actually are paid to the employee spouse or the employee spouse becomes eligible to receive benefits. Finally, under the reserve jurisdiction method, the non-employee spouse's percentage share is calculated later when the pension has vested and matured, and the pension is distributed at such later date.

In assessing whether the trial court here acted properly in valuing and distributing husband's pension, we must bear in mind that "the choice of a distribution method lies

within the sound discretion of the trial court." *In re Marriage of Hunt, supra,* 909 P.2d at 540. The *Hunt* court noted that trial courts have substantial leeway in determining which method of distribution best suits the needs and financial circumstances of the parties, and that according the trial court flexibility in this regard serves the goals of equitable distribution. Here, the trial court chose the net present value method.

■ The net present value method involves three steps:

(1) determining the net present value of the pension or retirement benefits; (2) determining the non-employee spouse's interest therein; and (3) awarding offsetting property to the non-employee spouse on dissolution of marriage. *See* Carew, *Tips, Tricks and Traps: Valuing Benefits Under Colorado's PERA Plan,* 22 Colo. Law. 527 (March 1993).

The parties and the court properly used the net present value approach to determine that the pension was worth approximately $410,000. *See In re Marriage of Kelm,* 912 P.2d 545 (Colo.1996). The crux of the controversy concerns the court's determination of the wife's interest in husband's pension.

■ The trial court employed, and wife urges application of, the "subtraction method" to conclude that the net present value of the marital portion of husband's pension was $190,000. Under such "subtraction method," the marital value of the pension is determined by subtracting the present value of the pension at the time of the marriage from its present value at the time of the dissolution. *See* G. Shulman & D. Kelley, *Dividing Pensions in Divorce* §§ 1.39 & 14.2 (1996).

Husband, however, contends that the subtraction method results in an unfair distribution and the trial court instead should have used the "time rule" formula approved by the supreme court in *In re Marriage of Hunt, supra,* to determine wife's interest in the pension. There, the time rule formula was employed to value a pension using the deferred distribution method, under which the pension benefits would not be distributed until husband retired.

■ Despite the relatively short duration of the marriage, application of the subtraction method here resulted in a marital present value equal to nearly half of the pension's overall present value. We agree with husband that this valuation approach failed to recognize that the primary reason for the pension's sharp increase in value during the four-year marriage was the employer's and husband's 28 years of pre-marital contributions. *See In re Marriage of Hunt, supra,* (the length of the marriage is a significant factor in determining the marital share of a pension). The question thus becomes whether this effect of the subtraction method renders it improper here.

■ When calculating the marital share of a pension, the generally accepted method is to multiply the present value of the pension at divorce by the marital or "coverture" fraction, i.e., the number of years or months benefits accumulated during the marriage divided by the total number of years or months during which benefits accumulated. *See In re Marriage of Gallo,* 752 P.2d 47 (Colo. 1988); *see also In re Marriage of Hunt, supra;* (using "time rule" formula for dividing post-marital increases in pension value under deferred distribution method); *Dividing Pensions in Divorce, supra,* §§ 14.1 & 14.2; J. Oldham, *Divorce, Separation & the Distribution of Property* § 7.10[6][b][iv] (1996); *Tips, Tricks and Traps: Valuing Benefits Under Colorado's PERA Plan, supra.*

Whether the "subtraction method" is an appropriate approach to value the marital portion of a pension under the net present value method is an issue which has not been addressed by Colorado's appellate courts.

Wife has cited no case authority upholding application of the subtraction method of valuing pensions. Moreover, at least one text has criticized this method as "terribly misleading." *See Dividing Pensions in Divorce, supra. See also Humble v. Humble,* 805 S.W.2d 558 (Tex.App.1991) (court rejects application of subtraction method, finding no reported cases applying or approving it).

Wife maintains that the subtraction method is consistent with § 14–10–113(4), C.R.S. (1987 Repl.Vol. 6B), which provides in part

that an asset of a spouse acquired prior to the marriage shall be considered as marital property "to the extent that its present value exceeds its value at the time of the marriage...." However, the fact that the increased value is treated as marital property does not require the court to adopt an inflexible and inequitable method of dividing the increased value of the asset. *See In re Marriage of Hunt, supra* (enhancement of ultimate retirement pay may be most dramatic at end of a spouse's employment, but non-employee spouse's contribution to pension should be considered the same whether spouse was married in middle of employee's career or at end).

As noted, application of the subtraction method gave wife a grossly disproportionate share of husband's pension. Accordingly, under the circumstances at issue, we conclude that the trial court abused its discretion in employing the subtraction method.

On remand, the trial court may find it advantageous to employ the net present value approach, and simply award husband the present value of the marital share of the pension based upon the "time rule" method and provide wife with an offsetting amount of marital property. *See In re Marriage of Hunt, supra* (noting preference for use of net present value method because it serves goals of finality and is generally more economical). If, however, the trial court in its discretion chooses another distribution method, it must calculate wife's percentage share in the pension by applying the factors set forth in *In re Marriage of Hunt, supra.*

## II. Valuation of Social Security Retirement Benefits

Because the issue will likely recur on remand, we address husband's contention that the trial court also erred in failing to exclude from the marital portion of husband's PERA pension an amount representing a "social security equivalent," i.e., the present value of the Social Security retirement benefits he would be expected to receive if he had been working in the private sector. We disagree.

Courts addressing whether Social Security benefits may be considered as property in dissolution of marriage cases have recognized the applicability of the anti-assignment clause of the Social Security Act, 42 U.S.C. § 407(a) (1994). That statute provides in pertinent part:

The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

In 42 U.S.C. § 659(a) (1996 Supp.), Congress created an exception to the anti-assignment statute to allow the use of legal process to collect child support and alimony. 42 U.S.C. § 659(i)(3)(B) (1996 Supp.), recodifying with minor changes 42 U.S.C. § 662(c) (1994), limits the meaning of "alimony." Significantly, that section declares in pertinent part:

Such term [alimony] does not include ... (ii) any payment or transfer of property *or its value* by an individual to the spouse or a former spouse of the individual *in compliance with any* community property settlement, *equitable distribution of property,* or other division of property between spouses or former spouses. (emphasis added)

As the North Dakota Supreme Court has declared:

Congress prohibited the use of (legal process) to disburse social security for (equitable distribution of property ... between spouses or former spouses.) Federal law has carefully limited a divorced spouse's ability to reach expected benefits of the other spouse through legal proceedings.

*Olson v. Olson,* 445 N.W.2d 1,5 (N.D.1989). *See In re Marriage of Swan,* 301 Or. 167, 720 P.2d 747 (1986); *see also Hisquierdo v. Hisquierdo,* 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979), (Congress, in enacting anti-assignment provision of the Railroad Retirement Act nearly identical to 42 U.S.C. § 407(a) and 42 U.S.C. § 659, intended to forbid states from treating railroad retirement benefits for property division purposes in a dissolution of marriage).

There is general agreement that, under the doctrine of preemption, these federal statutes prohibit state courts from valuing

anticipated Social Security retirement benefits as a marital asset subject to distribution. *See Mann v. Mann,* 778 P.2d 590 (Alaska 1989); *Olson v. Olson, supra; In re Marriage of Swan, supra; see also In re Marriage of Simon,* 856 P.2d 47 (Colo.App.1993) (social security disability payments not marital property); *cf. In re Marriage of Heupel,* 936 P.2d 561 (Colo.1997) (distribution of funds under military's special separation benefit program not preempted by federal law).

■ Accordingly, we conclude that anticipated Social Security retirement benefits cannot be distributed or used as an offset in division of marital property, and to do so would violate the Supremacy Clause of the United States Constitution. *See also Cox v. Cox,* 882 P.2d 909 (Alaska 1994); *In re Marriage of Hawkins,* 160 Ill.App.3d 71, 111 Ill.Dec. 897, 513 N.E.2d 143 (1987); *cf. In re Marriage of Heupel, supra.*

Thus, it follows that lack of Social Security benefits should not be considered in determining the value of the marital portion of husband's pension. *See Hayden v. Hayden,* 284 N.J.Super. 418, 665 A.2d 772 (1995); *Reymann v. Reymann,* 919 S.W.2d 615, 617 (Tenn.App.1995) ("If Social Security cannot be considered a marital asset, then the lack of Social Security should not be considered in reduction of marital assets."); *but see Cornbleth v. Cornbleth,* 397 Pa.Super. 421, 580 A.2d 369 (1990).

Because no evidence was presented concerning the present value of wife's anticipated Social Security retirement benefits, we do not address whether such benefits may be considered as an economic circumstance under § 14-10-113, C.R.S. (1987 Repl.Vol. 6B).

In view of this disposition, we need not address husband's remaining contentions regarding the trial court's initial property distribution.

The judgment is reversed and the cause is remanded for further proceedings consistent with the views expressed herein.

RULAND and ROTHENBERG, JJ., concur.