NO. 4-01-1147

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

In re: the Marriage of ) Appeal from

ROBERT L. CROOK, ) Circuit Court of

Petitioner-Appellee,     ) Champaign County

and ) No. 00D200 

PATRICIA J. CROOK, ) 

Respondent-Appellant.    ) Honorable

) Arnold F. Blockman,

) Judge Presiding.

_______________________________________________________________

         JUSTICE KNECHT delivered the opinion of the court:

         Petitioner, Robert Crook, and respondent, Patricia Crook, were granted a dissolution of marriage on May 11, 2000.  On June 20, 2001, the trial court entered a supplemental order on ancillary issues, including the division of marital property.  In dividing the marital property, the trial court awarded petitioner one-half of the present and future monthly payments respondent will receive from her pension plans.  The court also ordered respondent to reimburse the marital estate for $40,000 of marital funds she contributed to her nonmarital estate.  Respondent appeals these two aspects of the trial court's division of the marital property.

I. BACKGROUND

Petitioner and respondent were married on September 6, 1966.  During the course of the marriage, petitioner was a farmer while respondent worked in the home for the first 10 years of their marriage, after which she was employed as a secretary for 22 years.  The parties separated in the year 2000 when petitioner announced his desire to end the marriage.  During the marriage, two children were born, both of whom were emancipated when petitioner filed for dissolution.  

The farmhouse where petitioner and respondent lived during most of the marriage originally belonged to respondent's parents, who deeded the property to respondent in 1983.  The property consisted of a house, an attached garage, a small machine shed, a barn, a crib, and old shop, and a steel grain bin.  At some point, the parties tore down an old barn on the farmland and built a new shed.  They borrowed the money from Central Illinois Bank to build the shed and they paid on the loan, which was in both of their names, until petitioner quit farming in March 2000.  According to petitioner, he "woke up one day" and decided to quit farming.  He testified he made a better living in his current occupation as a truck driver, with an annual salary of $40,000.  On cross-examination, however, petitioner stated his net farm income in 1998 was $66,611 and in 1999 it was $149,795.  Petitioner denied he got out of farming because of the divorce.

When petitioner quit farming, the parties agreed to sell the farm equipment.  After some of the equipment was sold, $50,000 was placed into a bank account.  Petitioner testified it was his intention to place the proceeds from the sale into a separate bank account to pay any tax liabilities created by the sale.  Respondent testified she did not agree with petitioner's decision to apply the proceeds to the tax liability.  Petitioner testified that according to an accountant, if the parties filed a joint tax return, their tax liability for the year 2000 would be approximately $70,000. 

After the petition for dissolution had been filed but before the dissolution was granted, respondent took $42,000 from the bank account and petitioner took $8,000.  Because respondent felt "insecure" after petitioner filed for divorce and told her he might declare bankruptcy, she used $40,000 of the money she took to pay off part of the loan they had obtained from Central Illinois Bank to finance the construction of the new shed.   

Respondent testified it had always been her intention to retire at age 55.  Petitioner admitted during the marriage he was aware of respondent's desire to retire at age 55, but he did not agree with her decision.  Petitioner stated he intended to work until age 65, when he would receive approximately $850 per month in social security benefits.  This amount could increase if he continues to work.

Respondent, as planned, retired from her job as a secretary at Parkland College in July 2000, approximately two months after the dissolution was granted.  Respondent testified Parkland had an incentive plan that offered additional retirement income for early retirement.  The incentive included a lump-sum payment of "15 and some thousand dollars" and a gross amount of $757.49 per month, from which $80.50 was deducted for taxes and $87.55 was deducted for insurance.  Respondent would receive monthly payments under the incentive plan for 40 months, or until July 2004.  

On May 11, 2000, the trial court entered a judgment of dissolution of marriage as to grounds only.  On June 20, 2001, the trial court entered a memorandum opinion and supplemental order on ancillary issues.  In the June 20 order, the trial court denied respondent's request for maintenance.  The trial court also discussed the parties' pension plans and determined petitioner was entitled to an equal division of respondent's retirement funds from the early retirement package from Parkland College and her State University Retirement System and Illinois Municipal Retirement Fund accounts.  This equal division resulted in each party receiving approximately $838 per month based on respondent's current retirement income until July 2004.  However, after July 2004, when respondent's early retirement incentive payments from Parkland cease, each party will receive only $460.20 per month from respondent's remaining retirement funds.  In reaching its conclusion as to the division of respondent's pension benefits, the trial court did not consider the $850 in social security benefits petitioner would receive upon his retirement. 

The trial court also discussed the "Shed Issue and IRS Debt" and determined the marital estate was entitled to reimbursement for the $40,000 respondent took from the sale of the farm equipment and applied to the debt incurred by the parties to build the shed on respondent's nonmarital property.  Specifically, the trial court stated:  "The $40,000 came from the sale of farm equipment, clearly marital property.  The large shed would be a fixture located on the farm, clearly [r]espondent's nonmarital property.  The marital property was clearly transmuted into non[]marital property."  

The trial court rejected respondent's argument there should not be reimbursement to the marital estate because there was no evidence showing an increase in value to respondent's non-marital real property as a result of the $40,000 marital contribution toward the shed purpose.  The trial court then went on to acknowledge the law in this area is "quite murky" and courts "seem to support either a 'value added' or a 'dollar[-]for[-] dollar' approach" in determining how much the marital estate should be reimbursed for contributions toward a party's nonmarital estate.  In this case, the trial court examined the case law and determined the "dollar-for-dollar" approach was appropriate.  The trial court ordered respondent to "reimburse the marital estate by paying a greater percentage of [p]etitioner's 2000 tax liability of $67,991," and determined respondent should pay $53,995.50, which was $40,000 plus one-half of the remaining tax liability.  The court also ordered respondent to pay one-half of any tax liability incurred from the sale of farm equipment in 2001.

The trial court concluded by stating, "[t]he concept of this overall distribution is an equal division of the assets," and "[t]he pension plans were divided equally between the parties."  The court further stated "[t]he marital contribution to the shed was equalized by a greater contribution of [r]espondent toward an otherwise equal I.R.S. obligation.  This proposed distribution is quite appropriate considering the lengthy marriage and the equal contributions of the parties."  

Finally, the trial court further explained its decision to require respondent to pay a greater percentage of the tax debt:

"The [c]ourt is aware that this decision will impose some problems for [r]espondent in regard to payment of the tax indebtedness (ameliorated somewhat by the sale of the remainder of the personal property) and her retirement decision.  The [c]ourt finds, however, that such a disposition is fair under the circumstances of this case to achieve an equal division of the property and debt.  The [c]ourt notes that the [p]etitioner is working full[-]time as a truck driver.  The [r]espondent is healthy and is highly employable as a secretary.  Furthermore, the [p]etitioner has very little retirement funds in his own name, over and above the distribution from [r]espondent's pensions provided herein.  Finally, the [c]ourt also considered that [r]espondent has substantial non[]marital property set to her." 

This appeal followed.

II. ANALYSIS

Respondent presents two issues for review:  (1) whether the trial court erred in its division of retirement funds and (2) whether the trial court erred in ordering respondent to pay the income tax obligation created by the sale of the farm equipment.

A. Social Security Benefits

Respondent first argues the trial court should have 
considered
 petitioner's future social security benefits when determining a proper division of the parties' retirement funds.  Respondent contends if petitioner retires after July 2004, he will receive a minimum of $850 in social security benefits in addition to one-half of respondent's retirement benefits ($460.20), while respondent's share of her retirement funds will amount to only $460.20 per month.  Respondent argues the trial court should have considered petitioner's anticipated social security retirement income and then, based on the actual amount of money received by the parties, awarded respondent her entire retirement fund.  Therefore, respondent argues, each party would receive "approximately an equal amount of money for the balance of each of their lives."

Petitioner contends the trial court correctly followed the law when it refused to consider his prospective social security benefits when determining an equitable property distribution.  Further, petitioner points out when he retires and begins to draw social security, respondent will receive, in addition to the $460.20 from her own retirement benefits, an ex-spouse's share from social security of approximately $125.  Therefore, respondent would receive a total retirement benefit of approximately $585 per month upon petitioner's retirement.  This is approximately $725 less per month than the minimum petitioner can expect to receive upon retirement.  Petitioner argues although respondent's retirement income will be substantially less than his, the law regarding the indivisibility of social security benefits coupled with respondent's choice to retire at age 55 demanded such a result.

On appeal, we will reverse the trial court's distribution of property only if it amounts to an abuse of discretion.  
In re Marriage of Charles
, 284 Ill. App. 3d 339, 342, 672 N.E.2d 57, 60 (1996).  Pension benefits attributable to contributions made during the marriage are marital property.  
In re Marriage of Walker
, 304 Ill. App. 3d 223, 227, 710 N.E.2d 466, 468 (1999).  Section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/503(d) (West 2000)) requires the trial court to divide marital property in "just proportions" taking into account enumerated statutory factors and any additional factors the court deems relevant in each case.  
In re Marriage of Dunlap
, 294 Ill. App. 3d 768, 778, 690 N.E.2d 1023, 1029 (1998).  The touchstone of proper and just apportionment is whether it is equitable in nature and each case must rest upon its own facts.  
Dunlap
, 294 Ill. App. 3d at 778, 690 N.E.2d at 1029.  The requirement that the division of property be just and equitable does not mean it must be mathematically equal.  
Dunlap
, 294 Ill. App. 3d at 778, 690 N.E.2d at 1029. 

Social security benefits are not considered marital property and they may not be 
divided
 by state courts as part of an equitable division of property after a dissolution of marriage.  
Hisquierdo v. Hisquierdo
, 439 U.S. 572, 590, 59 L. Ed. 2d 1, 16, 99 S. Ct. 802, 812-13 (1979); 
In re Marriage of Evans
, 85 Ill. App. 3d 260, 263, 406 N.E.2d 916, 917-18 (1980) 
rev'd
 
on
 
other
 
grounds
, 85 Ill. 2d 523, 426 N.E.2d at 854 (1981).  As stated in 
Evans
, state courts cannot divide social security benefits upon dissolution of marriage because under the Social Security Act (Act) (42 U.S.C. §402 (2000)), a divorced spouse is entitled to retirement benefits from the individual's social security account.  Because the right of a divorced spouse to receive social security benefits is derived from federal statutory law and not from the common law, state courts cannot "disturb the statutory scheme by suggesting any award of any part of the actual social security retirement benefits to which [one party] may be entitled upon *** reaching retirement age."  
Evans
, 85 Ill. App. 3d at 263, 406 N.E.2d at 918.  

The Act does provide an exception to the antiassignment clause for the collection of child support and alimony that is past due.  42 U.S.C. §659(a) (2000).  However, the Act distinguishes between alimony and property transfers that result from the equitable distribution of property between spouses or former spouses.  42 U.S.C. §659(h)(3)(B)(ii) (2000).  Therefore, while social security benefits may be reached to satisfy past-due alimony and child support, they may 
not
 be divided in a property settlement pursuant to dissolution of marriage.  Even though social security benefits may not be divided in a property settlement, state courts are split on the issue of whether a trial court may 
consider
 one party's current or anticipated social security benefits as a factor in determining an overall equitable division of marital property. 

Petitioner cites 
In re Marriage of Hawkins
, 160 Ill. App. 3d 71, 78, 513 N.E.2d 143, 147 (1987), in support of his argument the trial court correctly refused to consider his future social security benefits in calculating an equitable property distribution.  In 
Hawkins
, the trial court ordered the petitioner to pay the respondent an additional $10,000 because of a "disparity" in social security contributions during the marriage and because of a contribution by the respondent of nonmarital assets to the marital estate.  
Hawkins
, 160 Ill. App. 3d at 74, 513 N.E.2d at 145.  Petitioner appealed the trial court's order.  On appeal, respondent argued the trial court did not improperly 
divide
 petitioner's social security benefits, but "merely sought to remedy an inequity resulting from unequal contributions during the marriage."  
Hawkins
, 160 Ill. App. 3d at 78, 513 N.E.2d at 147.  

The Fifth District, adopting the reasoning of 
Evans
, found the trial court's award "interfered with the Federal statutory scheme providing for the equitable distribution of benefits in violation of [the Act] and the principle of Federal supremacy."  
Hawkins
, 160 Ill. App. 3d at 78, 513 N.E.2d at 147.  The appellate court reversed the trial court's order inasmuch as the award was based on the disparity in social security contributions made on the petitioner's behalf during the marriage.  
Hawkins
, 160 Ill. App. 3d at 78, 513 N.E.2d at 147.  

It is important to note the specific issue in 
Hawkins
 was not whether it was improper for the trial court to 
consider
 one party's anticipated social security benefits.  The trial court in 
Hawkins
 did 
consider
 the petitioner's contributions to social security and it ordered an outright reimbursement for the amount of the "disparity" in social security contributions during the marriage.  Thus, an issue before the appellate court was whether the trial court erred in ordering the petitioner to pay respondent "an additional $10,000 because of a disparity in social security contributions" (
Hawkins
, 160 Ill. App. 3d at 77, 513 N.E.2d at 147), not whether the trial court erred in considering the social security contribution in determining an overall equitable distribution of marital property.  Indeed, the opinion does not mention the propriety of a trial court's 
consideration
 of future social security benefits, nor does it discuss any case law on the issue.  Therefore, the 
Hawkins
 opinion does not dispose of the issue currently before this court. 

Some state courts have considered the specific issue of whether a trial court may consider social security benefits under these circumstances.  
In 
Wolff v. Wolff
, 112 Nev. 1355, 1358, 929 P.2d 916, 918 (1996), the petitioner was entitled to social security benefits upon retirement, which were not subject to division upon divorce, while the respondent was entitled to a pension from a public employee's retirement account, which was considered community property and subject to division.  The trial court reduced the petitioner's monthly allowance from the respondent's public employee's retirement account, but it stated the reduction was not "an offset" of the petitioner's social security benefits.  
Wolff
, 112 Nev. at 1358-59, 929 P.2d at 918.  The Supreme Court of Nevada held even though the trial court stated the reduction in the petitioner's monthly allowance was not an offset of her social security benefits, the trial court still improperly 
considered
 the petitioner's social security benefits in the decree.  The supreme court found this was error:  the trial court "did consider [the petitioner's] social security benefits in the decree.  Calling a duck a horse does not change the fact it is still a duck. 'Considering' [the petitioner's] social security benefits does not change the fact that this is still an offset, and therefore, error."  
Wolff
, 112 Nev. at 1363, 929 P.2d at 921.  

While not factually identical, 
Wolff
 is similar to 
Hawkins
 because, in each case, the reviewing court found regardless of how the trial court arrived at its decision, the result was still an improper attempt to divide social security benefits, either directly or through an offset.  Other courts have reached similar conclusions.  See, 
e.g.
, 
Olson v. Olson
, 445 N.W.2d 1, 7 (N.D. 1989) (social security cannot be distributed or offset in marital property divisions); 
In re Marriage of Swan
, 301 Or. 167, 175-76, 720 P.2d 747, 751-52 (1986) (family courts cannot consider the social security benefits of either spouse when dividing marital property). 

Respondent cites an Iowa Supreme Court case in support of her proposition that the trial court may 
consider
 social security benefits in arriving at an equitable distribution of marital property upon dissolution of marriage.  
In re Marriage of Boyer
, 538 N.W.2d 293, 296 (Iowa 1995).  In 
Boyer
, the issue was whether, in ordering the division of marital property, a trial court may consider the fact one party can anticipate greater social security benefits upon retirement.  The court acknowledged social security benefits may not be divided directly or indirectly (by way of exact setoff) in arriving at a property settlement.  However, the court found a distinction between "(1) adjusting property division so as to indirectly allow invasion of benefits; and (2) making a general adjustment in dividing marital property on the basis that one party, far more than the other, can reasonably expect to enjoy a secure retirement."  
Boyer
, 538 N.W.2d at 296.  The court also states "a state court is not required to pretend to be oblivious of the fact that one party expects benefits that will not be enjoyed by the other.  This contrasting economic security can be weighed as a factor in fixing the economic terms of a dissolution decree."  
Boyer
, 538 N.W.2d at 293-94.  

Our research has revealed cases from many other states in which courts have found it proper for the trial court to consider current or anticipated social security benefits in making an equitable distribution of marital property.  See, 
e.g.
, 
In re Marriage of Zahm
, 138 Wash. 2d 213, 221-23, 978 P.2d 498, 502-03 (1999) (trial court may consider social security benefits for purposes of making equitable distribution of property in dissolution proceeding); 
Mahoney v. Mahoney
, 425 Mass. 441, 446, 681 N.E.2d 852, 856-57, (1997) (trial court could consider husband's anticipated social security benefits as a factor in determining an equitable distribution of marital assets); 
In re Marriage of Brane
, 21 Kan. App. 2d 778, 782-83, 908 P.2d 625, 628 (1995) (although antiassignment clause of Social Security Act precludes trial court from dividing social security income, trial court may consider spouses' social security income when dividing marital property); 
Eickelberger v. Eickelberger
, 93 Ohio App. 3d 221, 227-28, 638 N.E.2d 130, 134-35 (1994) (although a party's future social security benefit cannot be divided as a marital asset, it 
must
 be evaluated and considered by the trial court in effecting an equitable distribution of the parties' marital assets); 
Pleasant v. Pleasant
, 97 Md. App. 711, 720 n.3, 632 A.2d 202, 207 n.3 (1993) (social security benefits are not subject to direct distribution in a divorce proceeding; however, in certain situations, "it may be that a court could consider the fact that a party is receiving or will receive social security benefits, as 'any other factor' in determining whether to make a monetary award"); 
Pongonis v. Pongonis
, 606 A.2d 1055, 1058 (Me. 1992) (trial courts may consider anticipated social security benefits as a relevant factor in dividing marital property); 
In re Marriage of Knipp
, 15 Kan. App. 2d 494, 495-96, 809 P.2d 562, 564 (1991) (although federal law precluded trial court from dividing lump-sum social security disability award, trial court could consider the value of the lump-sum award in dividing marital property); 
Holland v. Holland
, 403 Pa. Super. 116, 119, 588 A.2d 58, 60 (1991) (divorce court properly took into consideration wife's potential social security benefits when awarding her portion of husband's future government pension);
 
Rudden v. Rudden
, 765 S.W.2d 719, 720 (Mo. App. 1989) (while unassignable as marital or separate property, current or potential social security benefits are economic factors to be considered in disposition of marital property).

In 
Wolff
, discussed earlier in this opinion, dissenting Justice Rose made the following persuasive argument in favor of allowing state trial courts to consider social security benefits:

"My concern is that the transfer/assignment prohibition [of the Act] has been unduly extended by state courts as in 
Olson
 and 
Swan
 to prohibit any consideration of a party's social security benefits when a state court is dividing property in a divorce.  I do not find this mandated by federal law or United States Supreme Court decision.

Although a dollar[-]for[-]dollar offset of anticipated social security benefits against a spouse's award would violate federal law, I find no mandate that would preclude a court, in its equitable determinations, from merely considering the fact that one spouse is likely to receive federal retirement benefits.

The prohibition of any consideration of social security benefits accrued by one party during marriage usually creates an inequity in the division of property between divorcing parties.  When one party has a state or private pension and the other person has accrued social security benefits, the person with a state or private pension fares poorly in property division when compared to the other party."  
Wolff
, 112 Nev. at 1364, 929 P.2d at 922 (Rose, J., dissenting).  

While Justice Rose is voicing his dissent in an opinion in which the majority held it was improper for the trial court to consider social security benefits, his words sum up the thought and reasoning of a growing number of courts that recognize trial courts sometimes must consider one party's social security benefits to reach a division of marital property that is equitable to both parties.  The current case is an unfortunate example of the inherent unfairness to one party that results when trial courts refuse to consider such benefits when dividing marital property.

Finally, we note in 1988, this court reviewed the propriety of a trial court's division of marital assets in which the petitioner's social security income 
was
 
considered
 as a factor.  In 
In re Marriage of Benz
, 165 Ill. App. 3d 273, 287, 518 N.E.2d 1316, 1324 (1988), the respondent, citing the petitioner's monthly social security income among other sources of income, argued the trial court's award would allow the petitioner "'to live the rest of her life in a substantially better style than [the respondent].'"  This court held "[w]hile a trial court 
must
 
consider
 
all
 
relevant
 
factors
 before exercising its discretion in distributing marital property, it need not make specific findings as to each of the factors set forth in [the statute]."  (Emphasis added.)  
Benz
, 165 Ill. App. 3d at 288, 518 N.E.2d at 1324.  The court then noted the petitioner's substantial past contributions to the marital estate in justifying its affirmance of the trial court's distribution of marital property.  
Benz
, 165 Ill. App. 3d at 288, 518 N.E.2d at 1324.  While the trial court's consideration of the social security benefits was not a contested issue in 
Benz
, the case is important because it shows social security benefits have been considered by this court and by trial courts as a relevant factor to consider when fashioning an equitable division of marital property.

We adopt the reasoning set forth in 
Boyer
 and the other cases discussed in this opinion allowing the trial court to consider one party's current or anticipated social security benefits in determining an equitable division of marital property.  The trial court in the present case did not consider such benefits.  In reaching its "equitable" distribution of marital property, the trial court concluded "[p]etitioner has very little retirement funds in his own name, over and above the distribution from [r]espondent's pensions."  This conclusion is incorrect considering petitioner, upon receiving social security benefits when he reaches retirement, will receive at least $725 more per month than respondent.  This division of marital property is inequitable and we therefore find the court's failure or refusal to 
consider
 petitioner's anticipated social security benefits amounted to an abuse of discretion.  Upon remand, the court must 
consider
 the fact petitioner expects to receive a substantial social security benefit and fashion a division of respondent's pension benefits that will place each party in 
similar
 financial situations.   

B. Reimbursement

The trial court ordered respondent to reimburse the marital estate for her use of $40,000 in marital funds to pay off a portion of a loan the parties obtained to build a shed on respondent's nonmarital property.  Respondent testified she applied the $40,000 to the loan on the shed because she was afraid she would be stuck with the debt after petitioner told her he might file for bankruptcy.  The court determined respondent used marital funds to pay off the marital debt that most benefited her and not the marital estate, and therefore, reimbursement was proper.  The court stated:  "The marital property [$40,000] was clearly transmuted to non[]marital property."  Therefore, the trial court ordered respondent to pay $53,995.50 ($40,000 plus one-half of the remaining balance) toward the 2000 tax indebtedness and any 2001 tax liabilities were to be divided equally between the parties.  In its order, the trial court used the "dollar[-]for[-]dollar" approach in determining the amount respondent would have to reimburse the marital estate.

Respondent argues she should have been treated more favorably in the trial court's allocation of the federal income tax debt because the tax indebtedness was incurred due to a unilateral, personal decision of petitioner to quit farming, while the shed debt was incurred early in the marriage and the use of the shed benefited the marital estate.  She also contends the shed debt was a marital debt and had she not applied the $40,000 toward the shed debt, the marital estate would have been burdened with an additional $40,000 in debt, which would have been subject to allocation upon dissolution.  Respondent states the trial court's order is "a penalty against [respondent] for paying one marital debt rather than another marital debt."  

When marital funds are contributed to nonmarital property, the nonmarital property retains its classification and the marital funds are transmuted to nonmarital property.  
In re Marriage of Adams
, 183 Ill. App. 3d 296, 304, 538 N.E.2d 1286, 1292 (1989).  There is a right to reimbursement for contributions made by one estate which have enhanced the value of an item of property classified as belonging to another estate.  
In re Marriage of Nelson
, 297 Ill. App. 3d 651, 657, 698 N.E.2d 1084, 1089 (1998); 750 ILCS 5/503(c)(2) (West 2000).  However, no right to reimbursement arises when the marital estate has been compensated by the use of the property.  
In re Marriage of Snow
, 277 Ill. App. 3d 642, 650, 660 N.E.2d 1347, 1352 (1996) (marital estate not entitled to reimbursement for mortgage payments toward husband's nonmarital home because marital estate was compensated by the use of the property during the 10-year marriage).     

Resolution of the issue before this court does not hinge on an analysis of whether the trial court employed the correct method of reimbursement.  Instead, a close examination of the facts crucial to the proper resolution of this issue reveals the marital estate is entitled to no reimbursement.  The trial court overlooked two important facts when it determined the marital estate was entitled to reimbursement.  First, even though the shed is located on respondent's nonmarital property, the debt incurred by the parties for its construction was, and continues to be, a 
marital
 
obligation
 arising from the farming operation of the parties.  Therefore, due to respondent's application of marital funds toward what in fact was a 
marital
 
debt
, the trial court's determination marital funds were transmuted to respondent's nonmarital estate was not entirely correct.  

The second fact the trial court overlooked is the substantial compensation the marital estate enjoyed as a result of respondent's nonmarital contributions.  
Even
 
if
 the trial court's reasoning and calculations were correct and respondent's actions did result in a contribution or a transmutation of $40,000 in marital funds to her nonmarital estate, the marital estate had been more than compensated for this contribution and is, therefore, not entitled to reimbursement.  

As respondent points out, petitioner has reaped the benefit of respondent's nonmarital contributions in providing the marital estate with a home, free of rent or mortgage payments, and the buildings necessary to sustain a successful farming operation for nearly 18 years.  The debt on the machine shed was incurred by the parties as a necessary part of the farming operation.  This marriage was of long duration and the evidence shows the farming operation allowed the family to enjoy a very comfortable standard of living, especially in the second half of the marriage.  Therefore, due to the substantial compensation to the marital estate resulting from respondent's nonmarital contributions, we find the marital estate is 
not
 entitled to reimbursement.  

We conclude this result is consistent with a principle established by this court in recent years:  marriage is a partnership.  
In re Marriage of Drury
, 317 Ill. App. 3d 201, 205, 740 N.E.2d 365, 367-68 (2000).  The trial court's order is inconsistent with this principle because it (1) supports petitioner's unilateral lifestyle choice, which was an economic detriment to the marital estate; (2) chastises respondent's long-standing intention to retire when she was able to do so; (3) rewards petitioner by softening the negative impact of his decision to abandon farming; and (4) punishes respondent for actions taken solely by petitioner.  These parties worked together throughout a nearly 35-year marriage to raise a family and make a living through the contributions of both.  Upon dissolution of their marriage, they should be recognized equally for their contributions to that partnership.

Accordingly, we reverse the trial court's order insofar as it requires respondent to reimburse the marital estate $40,000 by contributing that amount toward the tax indebtedness created by the sale of the farm equipment.  We recognize the overall tax burden on the parties may have been lessened somewhat if petitioner had more thoroughly planned the sale of the farm equipment.  However, this point was never addressed before the trial court and we cannot on appeal speculate as to what the tax liability may have been had petitioner acted differently.  Therefore, we affirm the trial court's order to the extend that it requires respondent to pay one-half of the total tax liability.

III. CONCLUSION

We reverse the trial court's order insofar as it grants petitioner one-half of respondent's pension benefits.  The trial court shall, upon remand, consider petitioner's anticipated social security benefits and reconsider its prior division of respondent's pension plans.  Although the court may not arrive at a division of marital property that results in a dollar-for- dollar offset of petitioner's anticipated benefits, the court should strive to arrive at a division of property that is equitable to both parties and places each party in similar economic circumstances.  

We also reverse the trial court's order insofar as it requires respondent to reimburse the marital estate $40,000.  Respondent shall remain liable for one-half of the tax liability.

Affirmed in part and reversed in part; cause remanded with directions.

McCULLOUGH, P.J., and APPLETON, J., concur.